HERMAN LOGENFIEL, Administrator, v. AUGUST RICHTER.[1]

January 17, 1895.

No. 9066.

**Donatio Causa Mortis—Promissory Note—Indorsement.**

A person 92 years old and in poor health was the owner of two promissory notes, of the respective amounts of $600 and $300, and, being in the apprehension of death, wrote upon the back of the $600 note as follows: "Within six hundred dollars are to be paid after my death to my grandchild Karl Augst, with interest. 27 Jan., 1893. [Signed] Traugott Richter,"—and then delivered the note, so indorsed, to Augst. A similar indorsement and delivery was made of the $300 note, except the amount payable by the indorsement was $300. Richter died February 15, 1893. *Held*, that Augst, by such indorsement and delivery, acquired no title in or to the notes, or the sums payable thereon.

Appeal by defendant from two orders of the district court for Scott county, Cadwell, J.; one order denying motion for a new trial, and the other striking out a portion of the settled case. The facts are stated in the opinion. Affirmed.

*M. R. Everett* and *Thos. Hessian*, for appellant.

*H. J. Peck*, for respondent.

BUCK, J. This action was brought by the plaintiff as administrator with the will annexed of the estate of Traugott Richter, deceased, against the defendant, August Richter, to recover on two promissory notes made by the defendant to Traugott Richter, dated May, 1892, one for the sum of $600, and one for the sum of $300, drawing interest, and each falling due April 1, 1893. Traugott

[1] Reported in 61 N. W. 826.

Richter died February 15, 1893, testate, naming as one of the executors in the will Charles Augst, who is the same person as hereinafter named or referred to as Karl Augst. Upon the death of said Traugott Richter, proceedings were duly had in the probate court of Scott county in this state whereby on April 7, 1893, the will of said Traugott Richter, deceased, was duly proved and admitted to probate, and thereafter, upon proper proceedings duly had, Herman Logenfiel, the plaintiff herein, was appointed by said probate court of the county of Scott administrator of said estate, and on June 14, 1893, letters of administration with the will annexed were duly issued to him. On January 27, 1893, Richter, who was 92 years old and in poor health, and in the apprehension of death, made the following indorsement upon the $600 promissory note above referred to, as follows: "Within six hundred dollars are to be paid after my death to my grandchild Karl Augst, with interest. [Signed] Traugott Richter. 27 Jan., 1893." And on the same day said Traugott Richter delivered said note, with the indorsement thereon, to Karl Augst. On the same day said Traugott made an indorsement upon the above-described $300 note as follows: "The within three hundred dollars are to be paid after my death to my grandson Karl Augst, with interest. Montgomery, 27 Jan., 1893. [Signed] Traugott Richter,"—and on said day delivered the said note, with the indorsement thereon, to Karl Augst. On April 3, 1893, Karl Augst presented these notes to the defendant, August Richter, for payment, and said defendant then paid the notes to Karl Augst, and he delivered the notes to August Richter, who held them at the time of the commencement of this action, and at the time of the trial. Plaintiff, as such administrator, demanded payment of said notes from the defendant, who refused to pay. Upon the trial in the court below the defendant denied the jurisdiction of the probate court of Scott county to entertain probate proceedings over the estate of Traugott Richter, upon the ground that he was not a resident of that county at the time of his death, but that he was in fact a resident of Le Sueur county at the time of his decease. The records of the probate court of Scott county, introduced in evidence upon the trial of this action, show that he was a resident of Scott county at the time of his death. Very little need be said upon this point. The rule in this state which applies to proceedings in probate courts is that the

records import absolute verity, and cannot be attacked collaterally unless there is some jurisdictional defect which appears upon the face of the record itself. Dayton v. Mintzer, 22 Minn. 393; Davis v. Hudson, 29 Minn. 27, 11 N. W. 136. Upon the face of the record, the probate court of Scott county appears to have had jurisdiction of the subject-matter, and such record must be deemed conclusive unless reversed upon appeal to another court. It would be allowing a most dangerous precedent to allow a collateral attack to be made upon the probate records on every occasion when a dissatisfied party saw fit to attack them. In our probate courts there are frequently very nice questions arising, which are sometimes difficult to determine. This question of residence is one of them, because residence is sometimes one of intent coupled with the acts of the party. In the course of time, very much of the evidence necessary to establish certain facts in such courts would not be obtainable in a trial by collateral attack. Now, it is a familiar fact that numerous titles to real estate depend upon our probate records, and to render them uncertain or liable to be defeated after a long period of time, when the evidence perhaps has been lost or has perished, would be to destroy confidence in our business relations, and perhaps destructive of what we supposed to be perfect titles, or even vested rights. It follows, therefore, that all evidence offered by the defendant to show that Traugott Richter was a resident of Le Sueur county at the time of his death was properly excluded by the court, and that the striking out by the court from the settled case the words "defendant excepts" in no way affected the defendant's rights, because the evidence to which he claims that he excepted was incompetent and immaterial.

The next and more important question arises upon the indorsements of the notes, their delivery to Karl Augst by Traugott Richter in his lifetime, and the payment by the maker, August Richter, to Karl Augst, and the delivery by him to the maker of the notes so indorsed. The facts are all disclosed by the record. In the view we take of the law, the verbal evidence introduced to show what disposition Traugott Richter desired to have made of the proceeds of the notes by Karl Augst is not material, because this is an action against the maker of the notes, and not against Karl Augst, and the question is whether the maker was justified in paying the notes as he did, or whether he is now liable as maker thereof, irrespective

of the question of whether he paid them or not. This involves the question of the legal effect of the indorsement upon the notes. If, as a matter of law, the indorsement upon the notes, independent of any other fact, gave no right to Karl Augst to collect the money, then the payment will not protect Richter in making such payment.

It is very evident that Karl Augst, whom the defendant claims to be the donee of the notes, could not have legally collected them until after the death of Traugott Richter, the alleged donor, because the indorsement was a qualified one, and it limited the payment to a date subsequent to the death of Traugott Richter. If he could not collect the proceeds of the notes before the death of the donor, then prior to that time the title did not vest in him, but was both legally and equitably in the donor, because, at any time prior to his decease, Traugott Richter had the right of dominion and control over the notes, and could have recalled them if he chose to do so. The money was not made payable to the donee in præsenti, but only upon the happening of a certain event. That event was to be one subsequent to the making of the indorsement, it is true, but the condition upon which the title was to pass was a condition precedent. That condition which the donor attached to his gift must happen before the gift could become a completed one by the terms of the indorsement. Under such circumstances, the title to the notes, or the fund represented by them, did not pass to the donee before the death of the donor. The mere handing or delivery of the notes to Augst did not vest in him the title to the fund represented by them, and as there was such a restricted delivery the title to the notes did not thereby pass, for the donor had power to control the fund until after his death. The indorsement, therefore, was only testamentary in its character or effect, and of course void as such. Basket v. Hassell, 107 U. S. 602, 2 Sup. Ct. 415. In the case cited, the instrument was in the following words: "Pay to Marten Basket, of Henderson, Ky.; no one else; then not till my death; my life seems to be uncertain. I may live through this spell. Then I will attend to it myself. [Signed] H. M. Chany,"—and Chany then delivered it to Basket, and died at his home in Tennessee; and it was held that Basket by such indorsement and delivery acquired no title to or interest in the fund. It is claimed that a contrary doctrine is held in the case of Haeg v. Haeg, 53 Minn. 33, 55 N. W. 1114. In this case the facts were that Haeg

and his wife in the lifetime of the husband executed a deed of his real property in separate parcels to his children, intending thereby to make a division thereof among them, among whom was Fred Haeg, one of the grantees. These deeds he intended to have delivered to the several beneficiaries just before or immediately after his decease, which occurred subsequently, but the deeds were not in fact actually delivered to the grantees until after the grantor's death. He did, however, place the deed in the control of a third person, and it was agreed between the grantor and such third person that the latter should deliver the deed to the grantee immediately after the grantor's death, and upon his deathbed he urged the third party not to forget his obligation, and the deed was so actually delivered to, and accepted by, the grantee after the grantor's death. It appears that the grantor had previously to the making of these deeds had an understanding with his wife and members of his family that his property should be divided in this manner, and in pursuance of this understanding the deeds were so executed and placed in the custody of a third person, to be finally delivered as stated. This court held the acts constituted a good and sufficient delivery of the deed. There is a long line of authorities sustaining this decision, and the rule, stated generally, is that where a grantor signs and acknowledges a deed, and deposits it with a third person, to be delivered by him to the grantee at the death of the grantor, without reserving to himself any right to control or recall the instrument; if the deed is afterwards delivered to the grantee the title passes, and the deed ordinarily takes effect by relation as of the date of the first delivery. Goodpaster v. Leathers, 123 Ind. 121, 23 N. E. 1090; Owen v. Williams, 114 Ind. 179, 15 N. E. 678; Crooks v. Crooks, 34 Ohio St. 610; Morse v. Slason, 13 Vt. 296; Hatch v. Hatch, 9 Mass. 307; O'Kelly v. O'Kelly, 8 Metc. (Mass.) 439; Foster v. Mansfield, 3 Metc. (Mass.) 412. Even though the distinction between the cases just cited and the one under consideration and that of Basket v. Hassell, supra, may seem more technical than real, yet the great weight of authority sustains the distinction. It seems that where gifts are causa mortis—that is, in view of approaching death—they are conditioned like legacies, and, although there is a present delivery, they take effect only at death, and hence are revocable. The instruments in controversy come under this class of gifts, and there-

fore the donor could recall or control the notes at any time prior to his death.

The order of the court below denying the defendant's motion for a new trial is affirmed.