WM. MOLLISON, Administrator of the Estate of CHRISTENA LAWSON, Deceased, Appellant, v. GEO. W. RITTGERS, Appellee.

**Evidence:** TRANSACTIONS WITH A DECEDENT. Where a party on cross-examination elicits new matter which would otherwise be inadmissible because a communication with one since deceased, he will be deemed to have waived the protection of the statute.

**Same.** A witness though present at a conversation between a decedent and others, in which he took no part, is not incompetent to testify to the transaction, even though interested in the event of the suit.

**Same.** The interest which disqualifies a witness from testifying to a transaction with a decedent is that which relates to the event of the particular suit and not merely to the subject of the controversy.

**Evidence:** VARIANCE OF WRITING. Where a gift of valuable papers to defendant and others had been consummated, a power of attorney relating thereto but executed some time afterwards, not shown to have been intended to evidence the transaction could not affect the title, and oral evidence of the gift had no tendency to violate the parol evidence rule.

**Gifts:** RETENTION OF LIFE USE: EVIDENCE. A gift may be so made as to reserve to the donor the life use of the property. Evidence held to show that the property in controversy was given to defendant by his mother prior to her death but to be held in trust for himself and others, reserving the life use to the donor, and that he was not constituted a mere agent of his mother.

*Appeal from Polk District Court.—*HON. JAMES A. HOWE, Judge.

TUESDAY, NOVEMBER 24, 1908.

ACTION for the value of certain papers alleged to have been appropriated by defendant. The petition was dismissed, and plaintiff appeals.—*Affirmed.*

*Myerly & Myerly,* for appellant.

*McHenry, Mulvaney & Jones* (*W. A. Graham,* of counsel, on the brief), for appellee.

LADD, C. J.—In 1880 the deceased delivered to her son, the defendant herein, certain notes and securities which he has cared for by collecting and reloaning, save that distributed prior to the time of her death in April, 1905. Plaintiff, as the administrator of her estate, prays for the value of the property then delivered with accumulations, while defendant contends that deceased constituted him a trustee for her five children, directing him to divide among said children. The evidence shows that on March 15, 1887, he paid out of the funds so obtained $134 to each of his sisters and a brother, and appropriated a like sum to his own use with his mother's consent, and on October 16, 1905, after her death, he distributed that remaining in his hands by paying each $345.31.

It is conceded that defendant's testimony of any personal transactions with deceased, if objected to, was inadmissible under section 4604 of the Code, providing

1. EVIDENCE: transactions with a decedent.

that: "No party to any action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom such party or interested person derives any interest or title by assignment or otherwise, and no hus-

band or wife of any said party or person, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, insane or lunatic, against the executors, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or guardian of such insane person or lunatic." When interrogated on cross-examination, he testified that the first distribution was with his mother's consent, and, as this was new matter, not pertaining to anything elicited on direct examination, plaintiff must be deemed, in eliciting it, to have waived the protection of the statute. *Walkley v. Clarke,* 107 Iowa, 451. As she consented thereto, title to the portion distributed in 1887 can no longer be questioned.

II. M. D. Rittgers, a brother of defendant, testified: That he was present in March, 1880, when deceased delivered the notes and securities, and that in doing so she stated that her husband had had all of her money she wished him to have and "she wanted to fix her property, the money that was there, so that her children would get it. . . . That she wanted it divided among her children. . . . That she wanted him to divide it among her children when it was collected. . . . She wanted my brother to take care of the property and see that the children got it." The wife of the witness last named also was present, and testified: That deceased then said that "she wanted to give them into his hands, that she wanted him to take charge of it, and it should be kept and divided among her children. She specified that . . . she said she wanted George Rittgers to take this property and see that the children got it."

*2. SAME.*

Each of the witnesses stated on cross-examination that her remarks were to all present, but on redirect examina-

tion that they were addressed to defendant, and Mr. Ritt-
gers testified that what he meant was that the talk was in
the presence of all. The record has satisfied us that in this
portion of the conversation the witnesses did not partici-
pate, and therefore that the evidence should not be ex-
cluded under the statute quoted. See *Walkley v. Clarke,
supra; Foreman v. Archer,* 130 Iowa, 49; *Mallow v.
Walker,* 115 Iowa, 238.

But even were this not so, neither of the witnesses
appear to have had any present interest in the controversy.
Any interest Mr. Rittgers once had appears to have been
removed by the payment of his share of the
alleged bounty of deceased, and the out-
come of the present litigation could not affect any right
he may have. As said in *German Savings Bank v. Hanna,*
124 Iowa, 374: "The disqualifying interest must be in
the event of the case, and not in the question to be decided.
The liability to a like action or his standing in the same
predicament, if the verdict can not be given in evidence
for or against him, is an interest in the question only,
and does not exclude the witness." Neither of these wit-
nesses will gain or lose by direct legal effect of the judg-
ment, and the record would not be legal evidence against
either. *Wormley v. Hamburg,* 40 Iowa, 22; *Clinton Sav-
ings Bank v. Underhill,* 115 Iowa, 292.

3. SAME.

But appellant insists that, even though the witnesses
were competent to testify, their evidence should be ex-
cluded for that, as is said, it tends to vary the terms of a
power of attorney executed by deceased to
the defendant in December, 1884. This
power of attorney concededly "applies and
refers to the property turned over to defendant," and
authorizes him "to collect any notes, accounts, or property
due me, to foreclose mortgages, to satisfy judgments and
mortgages, to loan any money that I may have, to sign

4. EVIDENCE:
variance of
writing.

my name to any deeds of conveyance of land and to direct any suits that may be necessary to collect mortgages, and any other property belonging to me, and to sign my name to any of the above purposes mentioned herein, giving and granting unto my attorney full power and authority to do and perform all and every act and thing whatsoever required and necessary to be done in and about the premises, as fully as I might or could do if personally present, reserving the right to revoke this power at pleasure." If a gift of the notes and mortgages had been consummated in 1880, it needs no argument to demonstrate that deceased could not affect the title thereto by executing a power of attorney in relation to the same four years later. Moreover, the instrument in its terms does not purport to modify or restate the conditions on which the papers were then delivered, nor was any evidence introduced tending to prove that it constituted or was executed for the purpose of embodying the original agreement. Who filed it for record does not appear. Had it been executed at about the time the papers were delivered, or thereafter, as embodying the understanding of the parties, there would be much force in appellant's contention that the oral evidence should be excluded because tending to vary the terms of a written instrument. See *Bowman v. Tagg* (Pa.), 8 Atl. 384; *Best v. Sinz,* 73 Wis. 243 (41 N. W. 169). But as the transaction was consummated, if at all, between deceased and defendant long prior to the execution of the power of attorney, and there was nothing to indicate that the purpose was to evidence it in writing, the above doctrine can not be invoked to exclude the oral proof, nor is defendant estopped from relying thereon. See *Fawkner v. Smith Wall Paper Co.,* 88 Iowa, 169. It follows that the testimony of the two witnesses was rightly received.

III. Appellant contends, however, that, even though this evidence be considered, it, in connection with the

other proof, establishes no more than an agency on the part of defendant which was revoked by the death of the intestate. The power of attorney apparently was executed by deceased on this theory, and tends strongly to indicate that such was the understanding of deceased; but there was no evidence that defendant ever acted thereunder, or that he placed it on record. Indeed, its purpose might well have been merely to enable defendant to satisfy existing mortgages of record. It also appears that defendant listed the property with the assessor in 1902 and 1904 in his name as agent of deceased, but he explained that in so doing he merely acquiesced in the suggestion of the assessor. He did not deny the latter's testimony, however, that he then informed the assessor that he was handling the money for his mother. This may have referred to her use, as he appears to have been turning over the interest to her. The husband of the deceased paid the taxes on the property in defendant's hands at least from 1896 to 1904, inclusive; but, as the interest was paid to his wife, this amounted to no more than allowing her who enjoyed the use to bear the burden. The testimony that defendant, in an examination before the court, stated that he had given deceased of the property or interest thereon from time to time during her lifetime, was undisputed. The objection that this was not the best evidence is untenable, even though his examination was taken down in shorthand. A gift may be so made that the grantor shall retain the use during life. *Tucker v. Tucker,* 138 Iowa, 344. Though there was no evidence that such a condition was incorporated in the agreement in this case, the children might well have accorded this consideration for the welfare of their mother.

5. GIFTS: retention of life use: evidence.

No time was fixed for division among the children, save when the paper should be collected, and the fact that defendant has held this property twenty-five years before un-

dertaking to divide among the children is cited as a circumstance inconsistent with the theory of a gift. Possibly, the other children might complain of this, but no one else, and the fact that the income was reserved on motion of the children for the mother sufficiently explains the circumstance. Nothing done with the property since the alleged delivery is necessarily inconsistent with the theory that the deceased gave the property as testified by the two witnesses. Their testimony plainly indicates not only the motive in parting with the notes and mortgages, but that she did in fact deliver them to defendant for himself and brother and sisters. The most that can be said is that in response to parental duty he delayed distribution, when this might have been effected immediately. It will be noticed that no word was uttered by the deceased indicating that she intended to retain any interest in the property or dominion over the papers. On the contrary, the intention is apparent that the ownership was to pass to the children at once, and that defendant was but their trustee to hold the securities for division in the future as directed by the deceased. She exercised no dominion after parting with the possession. Where one "clearly and intelligently manifests an intention to make a present gift of personal property to another, and in consummation of his intention makes such a delivery to a third person for the use of the intended donees as he is then capable of making, considering the character and situation of the property, the person to whom delivery is thus made will be presumed, in the absence of countervailing circumstances, to take the property as trustee of the intended donees and not merely as agent of the donor." In this case the person to whom delivery was made was one of the beneficiaries and received the deposit as trustee coupled with an interest, and the conclusion is inevitable that his possession was as trustee for the donees. See, as bearing thereon: *Tucker v. Tucker, supra; Martin v.*

*McCullough,* 136 Ind. 331 (34 N. E. 819); *Green v. Tulane,* 52 N. J. Eq. 169 (28 Atl. 9); *Hackett v. Moxley,* 65 Vt. 71 (25 Atl. 898).—*Affirmed.*