CLARISSA D. EATON, Appellee, v. C. N. BLOOD, Administrator, et al., Appellants.

**GIFTS:** Inter Vivos—Retention of Authority and Interest—Effect. It is not essential to the validity of a gift that the donor relinquish *all* authority or even *all* interest in the subject of it. So held as to a banking account, consisting of money and securities.

**Headnote 1:** 28 C. J. p. 663.

*Appeal from Jones District Court.*—F. L. ANDERSON, Judge.

APRIL 6, 1926.

ACTION to recover possession of a promissory note, mortgage, four Liberty bonds, and a savings account. Judgment on directed verdict for plaintiff. Defendants appeal.—*Affirmed.*

*B. E. Rhinehart* and *James E. Remley,* for appellants.

*C. J. Cash* and *M. C. Rogers,* for appellee.

MORLING, J.—I. Decedent, Rose Allyn Blood, about the year 1916, married the defendant C. N. Blood. She died intestate, in 1923, without descendants. Defendant was appointed administrator. Before marriage, she had lived three and one-half years with her sister, the plaintiff, at Fulton, Illinois. She then had $3,000 or more. $1,500 of this was represented by Liberty bonds, which Mrs. Blood had in a bank at Waterloo. In the fall of 1916 she opened a checking account with the Niles & Watters Bank, of Anamosa, of which George B. Frazier was president. Through him she subscribed for Liberty Loan bonds and war savings stamps. In 1918, decedent opened a savings account with the Niles & Watters Bank. This (savings) account on the books of the bank and on the pass book was in the name of the plaintiff. In 1919, the $1,500 in bonds were sent by the

Waterloo bank to the Niles & Watters Bank. On April 15, 1919, decedent wrote to the plaintiff (italic hers):

"To tell you that the bonds are *safe*. I have deposited all of them to the Clarissa D. Eaton Savings Acc't, at the Niles and Watters Bank of which Mr. Geo. B. Frazier is President. So he has to have the receipts to send to Waterloo Bank. In case anything happens to me, the Savings Account will be in *your name* and you will get it and there will be no going to Law about it. Also it will serve as a security provided I need to borrow money there. I shall endeavor to arrange my affairs so that you (who in past years made it possible for me to save above expenses) shall have what is now mine when I am through with it."

Mr. Frazier testifies that, when decedent transacted her private business, defendant was not present; that decedent said she did not want him to know her business; that she told him (Frazier) that she wanted him to take care of the bonds, and if anything happened to her, to deliver them to the plaintiff. Defendant borrowed money through the Niles & Watters Bank, secured by mortgage upon his property. The decedent made arrangements with Frazier whereby the note and mortgage were to be made payable to him, and signed by decedent with the defendant, but she was to furnish the money. Frazier says this was done to keep the defendant from knowing that the money was decedent's. This indebtedness, at the time of decedent's death, was represented by a note and mortgage for $1,310, payable to the order of Frazier, and in his possession. Money was taken from the checking account and from the savings account for the purchase of bonds and the making of the mortgage loan. The pass book for the savings account was never in the plaintiff's possession, but was kept in the bank. Withdrawals were made by Mrs. Blood or by Frazier by her directions. The bonds were apparently coupon bonds, but were recorded on the bank's books as the bonds of the decedent. They were never in decedent's possession. The bank had no written instructions from Mrs. Blood in regard to these properties; but Frazier says that her verbal instructions to him were that, in case of decedent's death, they were to be delivered to plaintiff. He couldn't tell when or how many times this statement was made,

and does not say that it was made after all of the property in controversy had come into his possession. He also testified that, unless plaintiff acknowledged the right of decedent to draw from the savings account, the decedent could not do so. On April 12, 1919, plaintiff wrote decedent:

"Am sending your certificate direct to you—through the bank—Murray says the writing you enclosed was not legal as you did not sign your name. Now listen to what I say—I would much rather you kept your bonds there if you can plan some way to keep them in our own family—the Bank where we have our Bonds charges to collect the interest—Joe Burgess says the Banks ought not to, and that the Bank in Rock Island where he does his business—does not charge for collecting. Now think well before you send them here."

On April 15, 1919, decedent wrote to Frazier:

"I wrote my sister Mrs. J. Murray Eaton—1025 10th Ave., Fulton, Ill. to send receipts for Bonds direct to you. I have today rec'd a letter from her with a sign in it indicating she has written me at the bank and so I suspect the receipts are in that letter. I have been ashamed to tell my sister that every little while Charlie borrows money at the Bank and that I need the bonds here for security. But I will write her at once that I have deposited all my Bonds here to a Savings Acct. in the name of Clarissa D. Eaton and that in case anything happens to me she will have the Acct. in her name to avoid trouble. So you open her letter to me and take out said receipts and forward to Com'l National Bank—Cor. E 4th & Syc. St., Waterloo, Iowa. Charge all expenses of transmission or transaction to her Savings Acct. I may not be able to call for my mail for some little time, so am writing this explanation that the matter of the Bonds can be cleared away at last. I am leaving my sister's letter unsealed for you to read so that you may know I am only desirous of a square deal all around. You might make note of her address in case it was necessary to communicate with her personally. Please hold my mail at Bank as usual."

On December 26, 1919, the plaintiff sent Frazier $25, to credit to the savings account. Frazier acknowledged receipt, stating that he had placed it to the credit of decedent, and that he had also received letter with the war savings stamps. On

December 30, 1919, plaintiff wrote Frazier, asking for an explanation of why the money had been placed in the savings account of decedent, "when I wrote you requesting that it be placed in my account." On December 31, 1919, Frazier wrote plaintiff that he had placed the $25 in plaintiff's name.

"The original deposit being made by Mrs. Blood and we having placed several amounts, the funds of which belong to Mrs. Blood, in this account. It was my understanding that the money in reality is her property and that she has the right to check out any or all of the money in this account according to her needs or wishes. If this is not correct and the $25.00 that you sent should go into a separate account we will be pleased to correct it and put into a distinct and separate account, one that will not be affected by the deposits that are made by us in the account mentioned. Also kindly let us know by return mail if we are allowed to pay withdrawals, to Mrs. Blood, from this account. The account as it stands is No. 301 Clarissa D. Eaton. All the deposits made to this account, except the $25.00 has been money derived from Mrs. Blood's resources. When the account was opened by Mrs. Blood she opened in your name, for reasons that I suppose you know as well as we, with the understanding that she have the privilege of drawing the money in event of her needing it. Kindly advise what I am to do in this matter by return mail as we cannot permit withdrawals by Mrs. Blood unless there is a distinct order from you now that this has come up."

On January 2, 1920, plaintiff wrote Frazier:

"All moneys placed to my credit in your bank is as far as I am concerned under the full control of Mrs. Blood—unless hereafter otherwise directed."

The deposits in the savings account consisted largely of collections of interest, and the withdrawals were for use in making loans. The items at decedent's death consisted of the $1,310 note and mortgage, four Liberty bonds, amounting to $2,100, and the savings account, in plaintiff's name, $345.46. The probate court, on citation to Frazier, ordered the property delivered to defendant, as administrator, the order stating that it was not an adjudication of property rights.

It is true that the parties sometimes referred to the prop-

erty in question as decedent's property, and that she thought that she might need the savings account, including the bonds, as security. The evidence does not show that the decedent was contemplating the incurring of any obligations on her own account, but shows that defendant was purchasing and borrowing, and that she was being called upon to sign with him. In those instances, however, she was taking care to provide the funds to take up the paper and hold it against defendant, and directing Frazier to ask for more security if Frazier thought best, stating, "It is so hard to tell what to do with a well meaning but thoroughly incompetent person." It is not shown that any of the property was used as security. In one instance at least, plaintiff put $25 in the savings account, and this is shown by a letter written by decedent to Frazier to have been for the purpose of making up the funds required to take up one of defendant's notes, without sacrificing upon a bond. Another item of $9.73 may have been likewise contributed. It is true, also, that plaintiff placed all the moneys in the bank to her credit under the full control of decedent, "unless hereafter otherwise directed." But it remains true that she made this important reservation just quoted, and that the legal title to the savings account was in the plaintiff, and the authority thus given to defendant was not a reservation made by decedent, but was granted by and exercised under the authority of the plaintiff, and under requirement by the bank. Expressions by decedent in reference to the funds as hers, made, as they were, colloquially and descriptively, were not unnatural, and were not inconsistent with plaintiff's ownership. Plaintiff and decedent consulted each other about methods, and with the undoubted purpose of vesting the property in the plaintiff, so effectively that plaintiff would have no trouble about securing exclusive enjoyment of it after the decedent passed away. The evidence shows that decedent attributed to plaintiff credit, in part at least, for her ability to accumulate; that she regarded defendant as a persistent borrower, and incompetent, and intended that he should know nothing about, and have no benefit from, her accumulations; that plaintiff and decedent had in mind the keeping of decedent's "bonds," at least, in their own family; and that their effort was directed toward securing their

safe transmission to plaintiff; and that to that end the savings account was put in the plaintiff's name. The bonds which decedent had on April 15, 1919, were considered and designated as belonging to and a part of the savings account in plaintiff's name. The savings account was drawn on, to purchase the note and mortgage; and we think it clearly appears that all of the property in controversy was understood and intended as the "savings account," which was in plaintiff's name, and that, so far as the legal title to any of it had not been transferred or actually vested in plaintiff, the title and the possession of it were, at decedent's death, in the bank, or Frazier, as trustee for the plaintiff. There was a completed gift. *Pyle v. East,* 173 Iowa 165; *Hoboken Bank v. Schwoon,* 62 N. J. Eq. 503 (50 Atl. 490); *Industrial Tr. Co. v. Scanlon,* 26 R. I. 228 (58 Atl. 786); *Martin v. Funk,* 75 N. Y. 134; *White v. Watts,* 118 Iowa 549; *Jones v. Nicholas,* 151 Iowa 362; *Hogan v. Sullivan,* 114 Iowa 456; *Vosburg v. Mallory,* 155 Iowa 165; *In re Estate of Stockham,* 193 Iowa 823; *Miles v. Miles,* 168 Iowa 153; *Prendergast v. Drew* (Conn.), 130 Atl. 75; *Miller v. Williams,* 195 Iowa 1305, 1308.

Defendant argues that Frazier was decedent's agent, and held the property as such; that Frazier's possession was that of the principal, and his authority died with her; that there was, therefore, no delivery and no completed gift. Frazier did assist decedent in transacting her business. We cannot agree with the contention that he held any of this property merely in the capacity of her agent. We think it cannot, upon this record, be found that there was merely an unexecuted promise on the part of deceased to make a gift to the plaintiff. The decedent did not herself have the possession of the property, nor did she, on the evidence before us, have the legal title to it. The possession of the securities and the evidence of the bank account were in Frazier, or in the bank in trust. The legal title, except as to the note and mortgage, was in the plaintiff, and that to the note and mortgage in Frazier, in trust, to make actual transmission and delivery to plaintiff at decedent's death. Neither can we sustain the contention that the gift was testamentary. The essence of a testamentary disposition of property is that it be merely a declaration of the testator's intention as to what

shall take place after his death. 2 Blackstone's Commentaries 499; 4 Kent's Commentaries 490; 1 Underhill on the Law of Wills 7, 8. Manifestly, much more than such a testamentary declaration took place in this case. It is not essential to the validity of a gift that the donor relinquish all authority, or even all interest in the subject of it.

II. Defendant contends that replevin will not lie. Replevin for a bank account is somewhat novel, though such cases have not been altogether unknown to the trial courts. The savings account sought to be recovered here may be construed to include the pass book. It was admitted in the answer that defendant received and has in his possession the property described in the petition. The defense is a denial that plaintiff is entitled to possession. The order of the probate court previously referred to was not such a judgment or process as would preclude the plaintiff from maintaining an action of replevin. It results from the foregoing discussion that the question presented is one of the right to possession, and that plaintiff is entitled to it.

The judgment is—*Affirmed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.