EDSON v. LUCAS, Commissioner of Internal Revenue.

No. 8464.

Circuit Court of Appeals, Eighth Circuit.

March 26, 1930.

F. H. Moore, of Kansas City, Mo. (Samuel W. Moore and Fred R. Angevine, both of New York City, on the brief), for appellant.

Prew Savoy, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Mabel Walker Willebrandt, Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before BOOTH, Circuit Judge, and SANBORN and DEWEY, District Judges.

SANBORN, District Judge.

The appellant has petitioned this court to review a decision of the Board of Tax Appeals entered April 19, 1928 (11 B. T. A. 621), approving deficiencies in income taxes for the calendar years 1919 and 1922, as determined by the Commissioner of Internal Revenue. Two questions are presented for determination:

(1) Whether an exchange of shares of stock in the Texas Company for debenture bonds in the Galena-Signal Oil Company, in 1922, resulted in a taxable gain to the appellant.

(2) Whether a sale of 708 shares of stock in the Texas Company by Mrs. Geraldyne Edson Pratt, the daughter of appellant, in 1919, after the transfer of such stock to her, produced a profit to appellant which was taxable under the Revenue Act of 1918 (Act of February 24, 1919), 40 Stat. 1057.

The appellant in 1922 exchanged 1,200 shares of the stock of the Texas Company for $60,000 par value of debenture bonds of the Galena-Signal Oil Company. Both the

stock and the bonds were held by the appellant for investment purposes. The Commissioner, and later the Board of Tax Appeals, held that, under the Revenue Act of 1921 (Act of November 23, 1921), § 202 (c) (1), 42 Stat. 227, 230, the exchange was not an exchange "for property of a like kind or use," and that appellant realized from the exchange a taxable gain of $30,540, upon which a tax of $8,272.81 was approved. Subsequently, the Board, in the case of Richard T. Greene & Lawyers' Trust Company, as Trustees of the Estate of William Hall Walker, Deceased, v. Commissioner of Internal Revenue, 15 B. T. A. 401, overruled its decision in the Edson Case, supra, upon this point, and held that the exchange of common stock for bonds, where both were held for investment purposes, was an exchange of property for other property of a "like kind or use" within the meaning of section 202 (c) (1), Act of 1921, and that no gain could be recognized. It also held that article 1566, Regulations 62 of the Commissioner of Internal Revenue, was unauthorized.

Section 202 (c) (1) provided:

"(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

"(1) When any such property held for investment, or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale), is exchanged for property of a like kind or use."

Article 1566, Regulations 62, was as follows:

"Art. 1566. Exchange of property which results in no gain or loss: Where property is exchanged for other property, even if the property received in exchange has a readily realizable market value, no gain or loss is recognized—

"(a) Where property held for investment is exchanged for other property of a like kind or where property held for productive use in trade or business is exchanged for other property of a like use. The words 'like kind' are defined as having reference to the nature or character of the property and not its grade or quality. Therefore, under this paragraph, no gain or loss is realized by one other than a dealer from the exchange of real estate for real estate, or from the exchange of

evidences of indebtedness (such as bonds and notes) for evidences of indebtedness, or from the exchange of shares of stock for other shares of stock; but one kind or class of property may not, under this paragraph, be exchanged for property of a different kind or class, as shares of stock for bonds or real estate for personal property."

The member of the Board who wrote the decision in the Edson Case gave to the statute the construction placed upon it by the Commissioner in the regulation above quoted. This in April, 1928. The Greene Case was heard before the entire Board, and decided on the 14th day of February, 1929.

We find ourselves in accord with the views expressed in the decision in the Greene Case. It seems reasonably clear that Congress intended that paper profits or paper losses resulting from the exchange of securities held for investment purposes, whether stocks or bonds, commonly known as "wash sales," should not be reflected in taxable income. It was evidently not intended that such profits or losses, if resulting from an exchange of common stock for bonds, preferred stock, bonds with conversion privileges, profit-sharing certificates, debentures, beneficial certificates in common-law trusts, or other evidences of the obligations of or rights of participation in the profits or property of corporate or other entities which are known to the modern financial world and generally sold to the public as "investment securities," should stand on any different basis than exchanges of stock for stock or bonds for bonds.

In Hellmich v. Hellman, 18 F. (2d) 239, 243, this court said: "It is both the English and the American rule that doubts in taxation statutes are resolved in favor of the taxpayer, and that laws imposing taxes are to be strictly construed and not extended beyond the clear import of the language used. It is the duty of taxing powers to make clear what is to be taxed and how." See also, United States v. Merriam, 263 U. S. 179, 188, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1527; Crocker v. Malley, 249 U. S. 223, 233, 39 S. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601; Rodenbough v. United States (C. C. A.) 25 F. (2d) 13, 15, 57 A. L. R. 1091; Eaton v. English & Mersick Co. (C. C. A.) 7 F. (2d) 54, 57.

The section of the statute in question here did not grant a privilege, as contended by the government. It provided that apparent profits from exchanges of property held for investment for property of a like kind or use were not to be reflected in taxable income.

Such profits, then, should not be taxed unless under the law they are clearly taxable. Since the reasons which support the view that the apparent gains from similar exchanges were not taxable are fully set forth in the opinion of the Board of Tax Appeals in the Greene Case, it is unnecessary for us to discuss the question further.

As to the second question: From April 12, 1919, to July 28, 1919, Mrs. Edson transferred to her daughter, Mrs. Pratt, 708 shares of stock in the Texas Company. The Commissioner found that the transfer was not a gift of the stock to Mrs. Pratt, and that the sale produced a profit to Mrs. Edson, upon which she was required to pay an income tax. The appellant insists that this conclusion of the Board is not justified by its findings or the evidence.

Without going into too much detail, the specific findings of fact of the Board are as follows: Margaret M. Edson is the wife of J. A. Edson, president of the Kansas City Southern Railway Company. During the times in question here, she resided in Kansas City, Mo. She had two living children, E. G. Edson, a son, and Geraldyne Edson Pratt, a daughter. In 1919, Mrs. Pratt lived with her parents, was 35 years of age, and had been married and divorced several years previously. She had little means, and was largely dependent upon her parents. Being desirous of providing an independent income for her daughter, Mrs. Edson in the year 1919 instructed her brokers to transfer from her own to her daughter's account 708 shares of stock of the Texas Company. These shares were a small portion of Mrs. Edson's holdings. The brokers opened an account in their books in the name of Mrs. Pratt, and transferred thereto 708 shares of the stock of the Texas Company then standing in Mrs. Edson's name. The transfer was made in several installments, the first on April 12, 1919, and the last in July of that year. On April 12, 1919, Mrs. Edson wrote the following letter to her daughter:

"To Mrs. Geraldyne Edson Pratt,

"Dear Geraldyne: I have transferred to you two hundred shares of Texas Oil Company stock as a gift, with this reservation, that when you sell the stock you invest the proceeds in United States Government securities, to so remain during your life, with the further understanding that no part of the principal will be disposed of either by sale or used for loan.

"The income use as your best judgment may dictate.

"Should death occur to you before either your father or myself, then the securities will revert to me, otherwise to him.

"If married and no issue, the preceding paragraph will prevail.

"If issue, the securities will be left in trust for the issue.

"Your mother,
"[Signed]    Mrs. J. A. Edson.

"Accepted:
"[Signed]    Geraldyne Edson Pratt."

In July, 1919, the 708 shares of stock standing in the name of Mrs. Pratt were sold by the brokers for approximately $185,000, and the proceeds were placed in the First National Bank of Kansas City to the account of Mrs. Pratt. One hundred thousand dollars of this amount was invested in Victory Loan bonds. The bonds were purchased by the First National Bank upon instructions given by Mrs. Pratt and were registered in her name. Thereafter the bonds were kept at the bank in a safe deposit box in her name, and the interest accruing thereon was collected by her and deposited from time to time to her account in the bank. Of the remaining $85,000, a loan of approximately $80,000 was made to J. A. Edson, evidenced by an interest-bearing promissory note payable to Mrs. Pratt. The loan was paid in 1925. On May 8, 1920, J. A. Edson wrote the following letter to the President of the First National Bank of Kansas City:

"My dear Mr. Swinney: Mrs. (Margaret Martha) Edson gave Mrs. Geraldyne Edson Pratt, some Texas Company stock which she (Mrs. Pratt) sold, placing the proceeds in Government bonds to the extent of one hundred thousand dollars (registered). These bonds she (Mrs. Edson) desires to place in trust for Mrs. Pratt through your Company, the 1st National Bank, as suggested. The money is to remain in Government bonds during her life and to be reinvested when present bonds mature, and no part of the principal is to be disposed of either by sale or to be used as collateral for a loan. The income to her therefrom is to be used as her best judgment may dictate.

"Should death occur to her before either her mother or father, then the securities will revert to her mother; if the mother's death should occur before the father's, the securities will revert to him—if the death of father and mother occur first, then if she (Mrs. Pratt) be married and there is no issue, the following paragraph will prevail—if there is issue, the securities are to be held in trust for such issue:

"If no issue and death occur to both father and mother first then at her (Mrs. Pratt's) death, the securities to remain in trust divided equally between her brother, Edward Gilroy Edson and her sister Ethel's daughter—Miss Margaret Helen Williams.

"In the event of her brother's death, his share is to be held in trust for his children and their legal heirs. In the event of Miss Margaret Helen Williams' death, her share to pass to her issue; if no issue, then to the children of Edward Gilroy Edson or their heirs.

"It is to be understood that if at any time, by accident or sickness, the income to any particular one named above is not sufficient to meet absolute necessary expenses, with other income they may have, you are authorized to appropriate from time to time from the principal whatever amount is needed. The same is to apply to the children to meet the expense of their education.

"Below is given a list of the securities going to make up the total of $100,000.00:

| Certificate Number | Amt. of Bond | Date of Maturity | Interest Rate | Interest Due |
|---|---|---|---|---|
| K–1105 | $ 50,000 | May 20, 1923 | 4¾% | June & Dec. 15, |
| D–4790 | 5,000 | " | " | " |
| D–4791 | 5,000 | " | " | " |
| D–4792 | 5,000 | " | " | " |
| D–4793 | 5,000 | " | " | " |
| D–4794 | 5,000 | " | " | " |
| D–4795 | 5,000 | " | " | " |
| D–4390 | 10,000 | " | " | " |
| D–4391 | 10,000 | " | " | " |

$100,000

"Yours very truly,
"[Signed] J. A. Edson."

Mrs. Edson had discussed the subject-matter of this letter with her husband and was fully aware of the latter's contents. On July 21, 1920, pursuant to this letter, Mrs. Edson entered into a trust agreement with the First National Bank of Kansas City, Mo., which recited that she, being desirous of establishing a trust, "has caused to be sold, assigned, transferred, set over and conveyed, unto the party of the second part (the Bank), its successors and assigns, the following described property, to-wit." The property described was the $100,000 Victory bonds purchased by Mrs. Pratt from the proceeds of the sale of the Texas Company stock referred to in J. A. Edson's letter. Under this agreement, the trustee was to turn over the net income derived from the trust fund to Mrs. Pratt, and the other conditions were substantially those outlined in the letter heretofore referred to. There was, however, inserted a ninth paragraph, not referred to in the letter, which recited that Mrs. Edson reserved the right to terminate the trust at any time prior to her death, by giving to the trustee notice of revocation. On June 29, 1925, Mrs. Edson signed a relinquishment of any right or power reserved to her by the trust agreement to revoke the trust. Prior to the execution of the relinquishment, a revenue agent, acting on behalf of the Commissioner of Internal Revenue, had made an investigation of Mrs. Edson's tax liability for the year 1919, and had commented upon the effect of the ninth paragraph of the trust agreement of July 21, 1920. The trust agreement, as modified, has remained continuously in effect.

The foregoing, in a somewhat abbreviated form, constitutes all of the facts designated "findings of fact" by the Board. There then follows what is designated as "opinion." In the opinion some of the facts are elaborated upon. The Board points out that Mrs. Pratt sold the Texas Company stock between the dates of May 5, 1919, and October 7, 1919, and states: "While the letter of April 12 refers specifically to only 200 shares of stock, we may reasonably assume that the other 508 shares were transferred upon the same conditions."

The Board states in its opinion (11 B. T. A. 621, 629): "The petitioner's purpose in making the transfer to her daughter, as shown by her oral testimony, that is, to provide her daughter with an independent income for life, is clearly the intention shown in the letter of April 12, 1919. We believe that the first paragraph of the letter must be construed as contemplating the sale of the stock and the purchase of government securities with the proceeds and as intending the same as one of the conditions of the gift."

The Board also says: "In the light of all the evidence before us, we are of the opinion that the petitioner was the legal owner of the stock at the time of its sale in 1919. In arriving at our conclusion we have tried to ascertain the petitioner's real intention and have taken into consideration all of the circumstances and acts of the parties. It should be borne in mind that the transactions here took place between a mother and father and their daughter who were all living together and among whom there has never been any contention with respect to the matters in question. We believe the evidence clearly shows that the petitioner's primary intention was to provide her daughter with an adequate income for life. She realized that on account of her daughter's lack of business

experience and independent knowledge of business affairs it would be unwise to entrust her with the absolute ownership and control of any large amount of property, and we do not believe that she intended to so do. There was not that fixed purpose at the time the assignment was made to then divest herself of all title, dominion and control of the stock and to vest these irrevocably in her daughter, which was said in Allen-West Commission Co. v. Grumbles et ux., supra [(C. C. A.) 129 F. 287] to be essential to a valid gift. We do not believe that where the petitioner set out in her own way to accomplish one thing, in which she failed perhaps for want of competent advice, we should hold that she did by her acts accomplish another thing which she did not intend."

Attention is called by the Board to the fact that only a little more than half of the proceeds of the 708 shares of stock was ever invested in government securities, and that, according to the appellant's own theory of the gift, this constituted a violation of the condition subsequent, that "the proceeds" from the sale of stock be invested in United States government securities, and rendered the gift subject to repudiation by the donor.

So far as they go, the specific findings of fact of the Board appear to be sustained by the evidence. The record shows that Mrs. Edson testified that in 1919 she gave to her daughter the 708 shares of stock referred to; that her motive in giving her daughter this stock was to make her independent, so that she would have enough income to support herself; that the 200 shares mentioned in the letter were not the entire gift; that there were 508 shares subsequently transferred to her, all before July 28, 1919; that Mrs. Edson had nothing to do with the sale of the Texas Company stock; that Mrs. Pratt bought $100,000 of Liberty bonds; that, after making the gift to her daughter, none of the stock or the proceeds ever came back into Mrs. Edson's possession, nor did any of the income ever come back to her; that the bonds were registered in the name of Mrs. Pratt; that after she (Mrs. Edson) made the gift of stock to her daughter, she talked with her husband about it, and was afraid that her daughter's former husband would want to borrow some of the money from her daughter or get her to dispose of some of her Liberty bonds, and that she suggested that something be done to prevent that; that the result was the trust agreement of 1920; that, prior to the time that she transferred the first of the stock to her daughter, she had

no conversation with Mrs. Pratt; that she asked her brokers to see that 708 shares were transferred to her daughter's account; that Mrs. Pratt was not familiar with business matters, and Mrs. Edson was "anxious to fix her, so that if she lost all the rest she had, she would have that to keep her fed and clothed —the income of the $100,000 of Liberty bonds." With reference to the clause of the trust agreement giving Mrs. Edson the right of revocation, she stated that she knew nothing about that clause, and that it was never called to her attention until a revenue agent of the Bureau of Internal Revenue mentioned it, whereupon the relinquishment was signed.

The testimony of Mrs. Pratt is to this effect: That she received 708 shares of stock from her mother as a gift; that it was placed in her name at her mother's brokers in Kansas City; that she sold the stock and received about $185,000 in cash; that the cash was placed in her account in the First National Bank; that she had a checking account at the bank during 1919; that no one else had any right to check upon it; that she invested $100,000 in Liberty bonds; that of the remaining moneys left in the bank she loaned $80,000 to her father, upon which he paid interest to her, and that the principal was paid by him to her; that no one except herself enjoyed the benefits of the gift.

Mrs. Edson was apparently not asked whether the additional 508 shares of Texas stock, which are not referred to in the letter of April 12th, were given to Mrs. Pratt upon the same terms and conditions as the first 200 shares; and Mrs. Pratt was not asked whether the loan to her father was made with the consent and approval of her mother, Mrs. Edson.

It seems rather apparent, however, that the disposition of the proceeds of the stock by Mrs. Pratt met with the approval of Mrs. Edson; at least there is no evidence to the contrary.

■ The government takes the position that the question of Mrs. Edson's intent in transferring the stock to Mrs. Pratt is a question of fact, that this court is not a fact-finding body, and that it cannot and will not disturb the conclusion of the Board.

We find ourselves in much the same position which this court was in in the case of Flannery v. Willcuts, 25 F.(2d) 951, 953, where it was said: "We, of course, agree with counsel for defendant in error, that this court will not weigh the evidence, if it is in disagreement, to find on which side it

preponderates, but we may search 'the record to find whether there is any substantial evidence to support the lower court's finding that as a matter of fact these gifts were made in contemplation of death.' If there is no such evidence the court erred in law." See also, Feick & Sons Co. v. Blair, 58 App. D. C. 168, 26 F.(2d) 540, 542.

If Mrs. Edson made a valid gift of this stock to her daughter in 1919, the sale of the stock produced no profit which was taxable to her.

■ As was pointed out by this court in Adams v. Hagerott, 34 F.(2d) 899, there is not complete harmony in the decisions as to the requirements necessary to constitute a valid gift inter vivos, but certain of the essential elements are not disputed. There must be a donor competent to make the gift, a clear and unmistakable intention on his part to make it, a donee capable of taking the gift, a conveyance, assignment, or transfer sufficient to vest the legal title in the donee, without power of revocation at the will of the donor, and a relinquishment of dominion and control of the subject matter of the gift by delivery to the donee. 28 C. J. 626 et seq.; 12 R. C. L. 930 et seq; Adams v. Hagerott, supra; Blair v. Rosseter (C. C. A.) 33 F. (2d) 286; Bingham v. White (D. C.) 31 F. (2d) 574; Ratterman v. Lodge (C. C. A.) 13 F.(2d) 805; Parrott v. Noel (D. C.) 8 F. (2d) 368; Miller v. Herzfeld (C. C. A.) 4 F.(2d) 355; Parker v. Mott, 181 N. C. 435, 107 S. E. 500, 25 A. L. R. 637, and cases cited in footnote; Allen-West Commission Co. v. Grumbles (C. C. A.) 129 F. 287; Mollison v. Rittgers, 140 Iowa, 365, 118 N. W. 512, 29 L. R. A. (N. S.) 1179 and note; Garrison v. Union Trust Co., 164 Mich. 345, 129 N. W. 691, 32 L. R. A. (N. S.) 219 and note; People's Trust Co. v. Dickson, 126 Misc. Rep. 580, 214 N. Y. S. 73; In re Humphrey's Estate, 191 App. Div. 291, 181 N. Y. S. 169; In re Peno's Estate, 128 Misc. Rep. 718, 221 N. Y. S. 205, 217.

A statement frequently found in the decisions is: "To constitute a valid gift inter vivos, there must be a gratuitous and absolute transfer of the property from the donor 'to the donee, taking effect immediately and fully executed by a delivery of the property by the donor, and an acceptance thereof by the donee."

■■ After a gift is once complete and the title has passed to the donee, the fact that the donor subsequently has possession of the property given does not affect the validity of the gift. Garrison v. Union Trust Co., supra;

Adams v. Hagerott, supra. The retention by the donor of some beneficial interest in the property or some right to share in the income or proceeds therefrom, which is not inconsistent with the passing of the full legal title or with the immediate possession and control of the property by the donee, does not defeat the gift. Northern Trust Co. v. Swartz, 309 Ill. 586, 141 N. E. 433; Eaton v. Blood, 201 Iowa, 834, 208 N. W. 508, 44 A. L. R. 1516 and note; Candee v. Connecticut Savings Bank of New Haven, 81 Conn. 372, 71 A. 551, 22 L. R. A. (N. S.) 568. A gift to a donee on condition that he divide the property between himself and others upon the death of the donor is valid. Mollison v. Rittgers, supra.

The Supreme Court of Minnesota, in McLeod v. Hennepin County Savings Bank, 145 Minn. 299, 300, 301, 176 N. W. 987, said: "A gift to take effect upon the death of the donor, no present interest passing to the donee, and the control and the right of recall remaining with the donor, is not effective nor enforceable upon the donor's death. Logenfiel v. Richter, 60 Minn. 49, 61 N. W. 826. But a gift passing a present interest is effective according to its terms. Murphy v. Bordwell, 83 Minn. 54, 85 N. W. 915, 52 L. R. A. 849, 85 Am. St. Rep. 454."

■ A gift which is subject to revocation by the donor or is coupled with a condition which prevents the gift going into immediate effect is not a valid gift inter vivos. 28 C. J. 646; Irish v. Nutting, 47 Barb. (N. Y.) 370.

A delivery of stock without transfer of title, the donor retaining the right to the income and the right to have the stock in case the donee predeceased the donor, is not a valid gift. In re Humphrey's Estate, 191 App. Div. 291, 181 N. Y. S. 169.

In People's Trust Co. v. Dickson, 126 Misc. Rep. 580, 214 N. Y. S. 73, at page 75, the court said: "It is not disputed that the requisites of a valid gift of personalty are an intent to make an immediate gift, a delivery of the subject thereof, and acceptance by the donee. Matter of Fonda's Estate, 200 N. Y. S. 881, 206 App. Div. 61. Nor does it seem to be questioned that, if there is the 'written transfer delivered to the donee,' which, in the case of Young v. Young, 80 N. Y. 422, at page 430, 36 Am. Rep. 634, was assumed to be competent to express the fact of the gift, it is not to be regarded as diminished or defeated by the reservation therein by the donor of the income during his life. Flint v. Ruthrauff, 53 N. Y. S. 206, 26 App. Div. 624, affirmed 57 N. E. 1109, 163 N. Y. 588; Judson v. Hatch, 157 N. Y. S. 182, 171

App. Div. 246; Beaumont v. Beaumont, 152 F. 55, 81 C. C. A. 251; Matter of Wright, 123 N. Y. S. 414, 139 App. Div. 1; Young v. Young, supra; Bone v. Holmes, 81 N. E. 290, 195 Mass. 495. Nor would it seem to be less a gift because accompanied by words indicating that it was 'provisional,' as in the case of Flint v. Ruthrauff, supra, or so expressed as to make it, though presently vested, subject to defeasance by the death of the donee before the donor, as surely a gift by will or formal deed of trust might be expressed. Matter of Seaman's Estate, 41 N. E. 401, 147 N. Y. 69, at·page 74; Matter of Green's Estate, 47 N. E. 292, 153 N. Y. 223, at page 228. I do not find, either in the case of Young v. Young, supra, or the majority opinion in Matter of Humphrey's Estate, 181 N. Y. S. 169, 191 App. Div. 291, anything to interfere with the above conclusions, and, if there was nothing else in the case, judgment would follow for defendant."

It appeared, however, that, in the case just cited, William Dickson had transferred merely the possession of ninety shares of Bethlehem Steel common, assigned in blank, to his wife, on condition that she hold the stock until after his death, and that it should then become her personal property. . It was held that the written instrument negatived any intent to make an immediate gift of this stock.

In the case of Flint v. Ruthrauff, 26 App. Div. 624, 53 N. Y. S. 206, affirmed 163 N. Y. 588, 57 N. E. 1109, it appeared that a gift of certain bonds was made by Miss Flint to Miss Ruthrauff; that Miss Flint made delivery of the bonds to Miss Ruthrauff with the understanding or qualification that Miss Flint should have some of the income, and subject to the gift being entirely defeated in case of Miss Ruthrauff's death occurring before the death of Miss Flint. It was held to be a valid gift.

■ It is safe to say that, where there is a complete transfer of the legal title to the subject-matter of the gift, together with some equitable or beneficial present interest, to the donee, without power of revocation in the donor, coupled with the intentional delivery of complete possession, dominion and control over the gift, the gift is not invalid because of conditions imposed by the donor which are not inconsistent with the immediate vesting of such legal title in the donee.

In Allen-West Commission Co. v. Grumbles, supra, a case which involved the question as to the validity of an alleged gift of stock, this court said (129 F. page 291): "Three things were essential to a valid gift of this stock by the defendant: (1) A fixed purpose, at the time he made the assignment to his wife, to then divest himself of all title, dominion, and control of the stock, and to vest these irrevocably in his wife; (2) the immediate and perfected execution of this purpose; and (3) the delivery to his wife of the most effectual means of using and reducing the stock to possession. *The indorsement and delivery of the certificate to his wife would have proved all these prerequisites.*"

In Northern Trust Co. v. Huber, 274 Pa. 329, 118'A. 217, 218, it was said: "The testimony indicated a voluntary transfer of the bonds to the son and the' money to his wife, without words showing an intention to limit the rights of either in the ownership. ❋ * * Having shown an unqualified transfer of possession, the burden then shifted to the plaintiff to establish a delivery of the property upon some condition or trust, as averred in the statement of claim."

The evidence in this case is conclusive of the fact that Mrs. Edson transferred the legal title and all dominion and control of the 708 shares of Texas Company stock to Mrs. Pratt in 1919, by transfers of the certificates of stock, which was certainly the most effective way of vesting her daughter with possession and control, that Mrs. Pratt accepted the transfer and assumed all dominion and control over the stock and the income therefrom and the proceeds thereof. The condition as to the disposition of the proceeds, if the stock were sold, was a condition subsequent; that is, a condition which did not interfere with the vesting of the title in Mrs. Pratt. See Beatty's Estate v. Western College of Toledo, 177 Ill. 280, 52 N. E. 432, 42 L. R. A. 797, 69 Am. St. Rep. 242; In·re Wagoner's Estate, 174 Pa. 558, 34 A. 114, 32 L. R. A. 766, 52 Am. St. Rep. 828. The condition as to the principal remaining intact was of the same character, and the provision as to the ultimate disposition of the gift, in case Mrs. Pratt predeceased her father and mother, did not invalidate the gift, as has already been pointed out. The Board was of the opinion that the loaning by Mrs. Pratt of $80,000 to her father gave Mrs. Edson the right to recall the gift, under the terms of the letter of April 12. The making of the loan, we think, did not revest the title of the proceeds of the sale of the entire 708 shares in Mrs. Edson as of 1919. Since there is no evidence that Mrs. Edson made the same conditions as to the gift of 508 shares as she did as to the gift of the original 200 shares, the presumption would be that what Mrs. Pratt did was in accordance with, rather than·

406

in opposition to, any conditions imposed when the gift was made.

The making of the trust agreement in 1920 by Mrs. Edson was, we think, of no great significance. The gift, if completed at all, was completed in 1919, and what Mrs. Pratt did with the proceeds of the stock in 1920 could not defeat it. She might have given her mother possession of the government bonds which were trusteed, without in any way affecting the question of the title to the stock in 1919. The evidence of the making of the trust agreement was only admissible for such bearing as it might have upon the question of Mrs. Edson's original intent in transferring the stock to her daughter, and it bears out, rather than negatives, her claim that she wanted her daughter's independence secured by having a present interest in the stock and its proceeds, at least to the extent of the income which might be derived therefrom. After Mrs. Edson parted with this property, in 1919, she had neither the legal title, nor possession, nor control, nor the income, nor the proceeds, and, if the theory of the Board should be sustained, she had nothing left as an incident of ownership except a mere expectancy and the duty of paying an income tax upon profits which she has never received and in all probability can never receive. Mrs. Edson is presumed to have intended what by her acts she actually accomplished.

We reach the conclusion that the Board of Tax Appeals erred as a matter of law in its finding that Mrs. Edson owned this stock at the time it was sold, and also erred in its conclusion that she received a taxable gain in 1922 from the exchange of the Texas Company stock for Galena-Signal Oil Company bonds.

The decision of the Board of Tax Appeals is therefore reversed, and the case remanded, with directions to enter findings in accordance with this opinion.