## NEHRING v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8063.

Circuit Court of Appeals, Seventh Circuit.

Dec. 3, 1942.

Rehearing Denied Jan. 4, 1943.

Thomas Dodd Healy and Harold Stickler, both of Chicago, Ill., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., for petitioner.

J. P. Wenchel and Claude R. Marshall, Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before MAJOR, KERNER and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

These are petitions for review of decisions of the Board of Tax Appeals, entered February 17, 1942. The Commissioner of Internal Revenue determined a deficiency in the income tax of the individual petitioner Paul A. Nehring for the years 1936 and 1937, a deficiency in the income tax of other individual petitioners for the year 1937, and a deficiency in the income and excess profits tax for the corporate petitioner for the years 1936 and 1937. The Board, in separate decisions, sustained the determination of the Commissioner. Inasmuch as similar questions are involved, the separate petitions for review, by order of this Court, have been consolidated.

Petitioners take no issue with the facts as found by the Board. There is presented only the legal question as to whether the individual petitioners are entitled under the provisions of Section 23(o) and the corporate petitioner under the provisions of Section 23(q), both of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S. C.A. Int.Rev.Acts, pages 829, 830, to deduct from gross income for the years 1936 and 1937 the amounts respectively claimed as contributions or gifts to a religious organization.

A resume of the facts seems desirable. (A more detailed statement may be found in 45 B.T.A. 1111.) The individual petitioners reside at DeKalb, Illinois, and the corporate petitioner has its principal office and place of business in the same city. The corporation's stock, aggregating 550 shares, with the exception of 50 shares is owned by the individual petitioners. The individual petitioners, Paul A. Nehring and Elizabeth M. L. Nehring, are father and mother respectively of the other three individual petitioners. Paul A. Nehring is president of the corporation and signs all corporation checks, with the exception of payroll checks.

For more than twenty years, all members of the family used the corporation bank account as a family account. All salaries and dividends accruing to them were credited to their individual accounts on the books of the corporation. Individual expenditures were met by check upon the corporation bank account and charged to their individual names on the corporate books.

Paul A. Nehring was a prominent member of the St. John's Lutheran Church of Sycamore, Illinois. The sixtieth anniversary of the church was had in 1936, upon which occasion the matter of building a new church, long under discussion, was revived. It appears that the only source from which donations might have been obtained was the Nehring family; at any rate, they were the only members of the congregation who actually made contributions for such purpose. About July, 1936, Paul A. Nehring discussed with the pastor of the church the selection of a building site. Shortly thereafter, he purchased a lot for the sum of $2,960.20, paid for it by a corporation check, charged the same against his personal account on the corporation books, and took title to the lot in his own name. Because of a defect in the title, the lot was not conveyed to the church until 1938. In 1936, Paul A. Nehring told the church pastor that he, representing his family, would donate $25,000, and the corporation, $10,000. The donations were to be so divided for tax-saving purposes. It appears that the conversations between Paul A. Nehring and the pastor concerning donations by the

Nehring family were kept secret from the members of the congregation at the suggestion of the pastor.

On September 12, 1936, by action of the church congregation, Paul A. Nehring was made treasurer of the building fund and was authorized to pay all necessary bills. No bank account was opened by him as such treasurer, but it was decided to use the corporation's books and bank account for all transactions relating to the church, in the same manner as had been done by him and members of his family. An account was opened on the corporation books in the name of the church. (This account, however, was not in the name of Nehring, as treasurer of the building fund.) The bills for the construction of the church were paid from the bank account of the corporation and charged on its books to the church account.

For more than twenty years, it had been the practice of the corporation to do business without formal action on the part of either its stockholders or directors. In 1936, Paul A. Nehring discussed with other directors of the corporation the matter of the corporation making a contribution of $10,000 to the church. Thereupon, he directed the bookkeeper to charge the corporation and credit the church fund with that amount. Such entry was made by the bookkeeper on December 31, 1936, although no actual payments were made by the corporation during that year. On similar instructions, the bookkeeper on December 31, 1937 credited the church account with $20,000, charging the same to the corporation. $18,113.10 of this amount was actually expended by the corporation during the year 1937, which amount was allowed by respondent as a deduction to the corporation for that year.

In 1936, Paul A. Nehring directed the bookkeeper to charge his individual account with the sum of $15,000 as a contribution to the church, and to credit the church account with such amount. He gave similar orders at various times in 1937 with respect to the sum of $22,197.10, to be contributed by him to the building fund. In 1937, as a result of a family discussion, it was agreed that the wife, son and two daughters would donate $10,-000 each to the building of the church. Such agreement was reported to the church pastor by Paul A. Nehring, who also instructed the bookkeeper to make the ap-propriate entries, crediting the church fund and charging the individual accounts. The bookkeeper, however, made no book entry either in 1936 or 1937. In January 1938, an entry was recorded, charging the account of Paul A. Nehring and crediting the church account with $15,808.53. The record discloses the following explanation: "To record donation made by P. A. N. to the church for the year ending December 31, 1936." ($808.53 of this amount represented church contributions for purposes other than the erection of the building.) Also, in January 1938, the bookkeeper made a similar entry, with a like explanation as to the donations alleged to have been made by each of the individual petitioners for the year 1937. The book-keeper's delay in making the entries on the corporation's books, so the Board found, was caused by the fact "that the company was building a new plant; that it was housed in temporary quarters; and that it was very busy."

At all times during 1936 and 1937, each of the individual petitioners had a credit upon the corporate books of amounts greatly in excess of their alleged donations, and, during the same years, the bank account of the corporation was at all times also in excess of the amount necessary to pay any or all of the so-called donations.

Clearance of the church lot purchased by Paul A. Nehring was commenced in 1936, actual construction in October, 1937, and the church dedicated in June, 1938. No charges were made against the church building fund in 1936. Construction bills in the amount of $18,113.00 were paid by corporate checks in 1937, and $74,894.28 in 1938, all charged on the corporate books to the church account. Additional amounts, not here material, were paid out and similarly charged in 1939.

The corporate petitioner kept its books and filed its income tax returns on the accrual basis, and the individual petitioners filed their returns on the cash basis.

As stated, respondent allowed the corporation for the year 1937 a deduction in the amount of $18,113, the amount actually expended by the corporation on behalf of the church building during that year. All other deductions claimed, both by the corporate petitioner and individual petitioners for the years 1936 and 1937, on account of their alleged donations respectively, for those years, were disallowed.

by the Commissioner, which action was sustained by the Board.

Section 23 of the Revenue Act of 1936 enumerates the deductions allowable to a taxpayer from gross income. Paragraph (*o*) enumerates certain charitable contributions allowable to the individual taxpayer, and paragraph (q), charitable contributions allowable to a corporate taxpayer. Insofar as here material, the language of each paragraph is exactly the same; that is, the deduction is authorized for "contributions or gifts made within the taxable year to or for the use of a * * * foundation, organized and operated exclusively for religious * * * purposes." The answer to a single question, therefore, is determinative of the instant controversy; that is, were the alleged contributions by the corporation and by Paul A. Nehring in 1936 and 1937, and those by other individual petitioners in 1937, actually made to the church within the taxable year for which the deductions were sought?

■ As to the deductions claimed by the corporation, the Board in its opinion relies largely upon article 23(q)-1 of Treasury Regulation 94, which provides in effect that a corporation may deduct for a church gift or contribution "only for the taxable year in which they are actually paid, regardless of when pledged." From this provision, the Board concludes that the corporate contributions are not deductible, as they were not "actually paid" during the taxable years. There is no comparable regulation applicable to paragraph (*o*), permitting deductions for church contributions by individuals. Petitioners argue that the regulation as to corporate contributions is invalid as applied to a corporation on the accrual basis, for the reason that it is inconsistent with the statutory provision. In other words, the statutory basis for corporate deduction is "a contribution or gift made within the taxable year", while the Treasury Regulation basis is "only for the taxable year in which they are actually paid." Whatever merit there may be in petitioners' contention in this respect is not controlling to a decision, in our view of the matter. In other words, it is our opinion that both the corporate and individual contributions must be measured by the statutory test; that is, whether they were made to the church within the taxable years.

The Board, as to the individual petitioners, held in effect that their acts during the taxable years were such that they had not relinquished the right to exercise dominion over the funds in question, that they could have countermanded the instructions previously given the bookkeeper, and have withdrawn their several pledges. Furthermore, there was no consideration for the gifts and they were not enforceable. In other words, their acts were not sufficient to vest in the church the contemplated gifts.

■ Both petitioners and respondent are in agreement as to the essential elements of a gift as announced in Edson v. Lucas, 8 Cir., 40 F.2d 398, 404. The element pertinent to the instant situation is "a conveyance, assignment, or transfer sufficient to vest the legal title in the donee, without power of revocation at the will of the donor, and a relinquishment of dominion and control of the subject matter of the gift by delivery to the donee." Petitioners argue that their acts in transferring from the corporate and their individual accounts to the church account on the books of the corporation constituted parol assignments of accounts receivable or credits sufficient to complete the gifts in the years claimed. A number of authorities are relied on in support of this argument, among which are Smith v. Commissioner of Internal Revenue, 7 Cir., 59 F.2d 533; Tracy v. Commissioner of Internal Revenue, 6 Cir., 70 F.2d 93; and Kell v. Commissioner of Internal Revenue, 5 Cir., 88 F.2d 453. It was held in these cases and others of a similar nature that the acts of the parties constituted gifts, but an analysis of the cases, in our view, furnishes little, if any, support to petitioners' contention in the instant case. In such cases, the assignment was as to property in the hands of a third party or was placed in the hands of a third party by reason of the assignment.

In the Smith case (a decision of this Court), a father, on Christmas day 1923, gave to each of his five children certain shares of corporate stock, reserving the right to receive the income therefrom. He advised the children that the certificates would be placed in separate envelopes bearing the name of each child, and placed in the bank box of one of the sons. The certificates were endorsed and so placed in the box. It was held, in order to constitute

a gift, that delivery to the actual donee was not necessary, but that it could be made to a third person for the benefit of the donee.

In the Tracy case, assignment by a husband to his wife of stock in a broker's trading account was sustained as a gift. Here, the property embraced in the gift was in the hands of a third party, and the acts of the donor in making the gift were so recognized by such third party.

In the Kell case, a gift was sustained where a husband by written instrument assigned to his wife and children his interest in certain leases held by a partnership, of which he was a member. The assignment was recognized by the partnership, and the transfer of such interest actually recorded upon its books. Thereafter, the donees included the income from such assigned interest in their income tax returns, and there were other acts, both on the part of the donor and the donees, which exhibited a completed gift.

The facts in the instant situation, however, have only meager, if any, resemblance to such cases. We are unable to perceive how the acts either of the corporation or of the individuals in transferring a credit from the corporate account or the individual accounts to the church account upon the books of the corporation could constitute an assignment to the church. It is true, of course, that Paul A. Nehring, president of the corporation, had been designated as custodian of the church building fund, but the credit was not transferred on the corporate books into his name as such treasurer, but merely credited to the church account. Even though the credit had been transferred to him as treasurer of the church fund, we are of the view that it would make no difference. In any event, the transfer was not made to an independent third party, nor was there any assignment of property in the hands of a third party. The acts or transactions of the parties were not unlike those of a person taking money from one pocket and placing it in another for a special purpose. Until used for such purpose, it remains his money, subject to his control and dominion, and he can do with it as he pleases.

In our view, the most that can be said for the acts of the parties in transferring on their own books credit from their corporate and individual accounts to the church account was to earmark such credit for the purpose of a gift or contribution to the church. Further action, however, was required before the gift was finally consummated, and the action which resulted in such consummation was the actual utilization of this credit for the purpose intended—that is, the construction of the church building. Certainly, the bank account of the corporation was not affected by the assignment of credit upon its books. That took place only when the funds were actually expended, in the form of checks drawn upon such account. Until that time, so we think, petitioners, who had complete control of the corporation, retained the power to revoke the so-called assignments of credit. The corporation, likewise, retained such power. Having failed to divest themselves irrevocably of title and control over the credit earmarked for the church within the taxable years, they were not entitled to the deductions claimed.

There is no question but that petitioners acted in perfect good faith. A study of the record leaves no room for doubt as to what their intentions were during the taxable years, or that such intentions were subsequently carried into effect. They have failed, however, to bring themselves within the terms of the statute which permits a deduction only for the year during which a contribution is made.

The decisions of the Board of Tax Appeals are affirmed.