Eugene and Julia JORDAN, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 67–369.

United States District Court
W. D. Oklahoma.

March 21, 1969.

Kenneth N. McKinney, Oklahoma City, Okl., for plaintiffs.

B. Andrew Potter, U. S. Dist. Atty., and Givens L. Adams, Asst. U. S. Dist. Atty., Oklahoma City, Okl., Daniel L. Penner, Atty., Dept. of Justice, Washington, D. C., Gene A. Castleberry, Atty., Tax Division, Dept. of Justice, Ft. Worth, Tex., and John O. Jones, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiffs in this action seek recovery of income taxes assessed and collected by the Defendant relating to the calendar year 1962. At the trial of this case by the Court, all of the items in controversy were agreed upon by the parties but one which dealt with the year in which a charitable contribution could be taken as a deduction.

It appears from the pleadings and the evidence adduced at trial that Plaintiffs owned certain debentures of the Riviera Hotel (Hotel) and in 1962 agreed to sell said debentures to the Hotel for their par value plus interest. At the same time Plaintiffs also sold some common stock of the Hotel to the Hotel. The total sale price was $60,000.00. The agreement was formalized in a letter which provided that Plaintiffs were to receive an initial payment of $10,000.00 on November 1, 1962 and interest thereon at 6% from July 1 through October 31, 1962, and $5,000.00 monthly thereafter, starting on December 1, 1962 until paid, with interest on the outstanding balance at 6% per year. The agreement was carried out and all the payments were made when due.

On December 2, 1962, Plaintiffs made a bookkeeping entry on their records transferring as a gift $16,000.00 of their account receivable from the Riviera Hotel resulting from the above sale of debentures and stock to the account of the Eugene and Julia Jordan Foundation (Foundation). On December 12, 1962, Plaintiff Eugene Jordan wrote a letter to the Foundation advising it that he had as of that date made a gift of $16,000.00 to the Foundation out of the Hotel account receivable, and described the schedule of payments previously agreed to be made thereon by the Hotel. In this letter, Plaintiff Eugene Jordan stated the Foundation would receive its proportionate part of each payment on principal and the interest when received by him from the Hotel. During 1962, pursuant to the debenture sale agreement with the Hotel, Plaintiffs received $16,059.33, $1,059.33 of which was interest. During 1962 Plaintiffs made one payment to the Foundation from the Hotel account receivable in the amount of $2,166.66. Other payments were made in later years. The Hotel was not advised of the said transfer to the Foundation and, therefore, made no change in its records as to whom it should pay the Plaintiffs' account receivable.

In the course of the Internal Revenue Service audit of the Plaintiffs' records, these facts were noted by the examining agent and the deduction of $16,000.00 claimed by the Plaintiffs as a charitable contribution in 1962 was disallowed.

The foregoing facts were not disputed at the trial and constitute the Court's findings of fact herein.

Charitable contributions are permitted by the Internal Revenue Code:

26 U.S.C.A. § 170: "(a) *Allowance of Deduction.*—(1) General rule.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is

made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate."

According to Treasury Regulations issued with respect to this section, the taxpayers' accounting method or the date of the pledge do not affect a determination of when a charitable contribution is made:

> 26 C.F.R. § 1.170.1: *"Charitable, etc., contributions and gifts; allowance of deduction.* (a) *In general*—(1) *General rule.*—Any charitable contribution (as defined in section 170(c)) actually paid during the taxable year is allowable as a deduction in computing taxable income, regardless of the method of accounting employed or when pledged."

The parties do not question whether this gift was a proper gift to a proper organization. The disagreement is with respect to the interpretation of the phrase "payment of which is made within the taxable year" as used in the Internal Revenue Code and "actually paid" as used in the Regulations.

Plaintiffs contend that they satisfied the above requirements of the Code and Regulations by assigning a portion of the account receivable from the Riviera Hotel to the Foundation in 1962. Defendant contends that the assignment was not effective under the above Code and Regulation to transfer the property in the account receivable in that Plaintiffs did not relinquish control and could have revoked it at any time, having retained full control over the funds sought to be assigned. In this connection, Defendant points out that the Hotel was not advised of the assignment or transfer; all payments were made by the Hotel direct to the Plaintiffs and no escrow or trust arrangement was employed by which control was surrendered. Defendant also contends that no payments were *actually paid* or *paid within* 1962 to the Foundation from the Hotel account receivable. (This is not correct. $2,166.66 was paid to the Foundation on December 10, 1962 by Plaintiffs from Hotel payments to them on said account receivable, one-half or $1,083.33 of which was credited to the 1962 transfer involved herein and the other half was credited to an earlier transfer not involved herein).

One of the first cases to consider what constitutes a completed gift for charitable purposes by a taxpayer, Edson v. Lucas, 40 F.2d 398 (Eighth Cir. 1930), stated that:

> "There must be a donor competent to make the gift, a clear and unmistakable intention on his part to make it, a donee capable of taking the gift, a conveyance, assignment, or transfer sufficient to vest the legal title in the donee, without power of revocation at the will of the donor, and a relinquishment of dominion and control of the subject matter of the gift by delivery to the donee. * * * A statement frequently found in the decisions is: 'To constitute a valid gift inter vivos, there must be a gratuitous and absolute transfer of the property from the donor to the donee, taking effect immediately and fully executed by a delivery of the property by the donor, and an acceptance thereof by the donee.'" 40 F.2d 398 at p. 404.

In a case almost like the present one, Nehring v. C. I. R., 131 F.2d 790 (Seventh Cir. 1943), the taxpayer attempted to make a gift of an account receivable. The court held that the taxpayer had not met the test of the *Edson* case, supra:

> "We are unable to perceive how the acts either of the corporation or of the individuals in transferring a credit from the corporate account or the individual accounts to the church account upon the books of the corporation could constitute an assignment to the church. It is true, of course, that Paul A. Nehring, president of the corporation, had been designated as custodian of the church building fund, but the credit was not transferred on the cor-

porate books into his name as such treasurer, but merely credited to the church account. Even though the credit had been transferred to him as treasurer of the church fund, we are of the view that it would make no difference. In any event, the transfer was not made to an independent third party, nor was there any assignment of property in the hands of a third party. The acts or transactions of the parties were not unlike those of a person taking money from one pocket and placing it in another for a special purpose. Until used for such purpose, it remains his money, subject to his control and dominion, and he can do with it as he pleases." 131 F.2d 790 at p. 794.

Relinquishment of control of the property or thing donated is a most important element of a charitable contribution, and of any gift. The principles applied by the two cases quoted is the law of gifts generally. See 38 C.J.S. Gifts § 10, pp. 786–788 and §§ 17–22. These principles have been applied in Oklahoma. Davis v. National Bank of Tulsa, 353 P.2d 482 (Okl.1960).

■ In the present case, the taxpayers failed to comply with the requirements for effecting a valid gift of a portion of the said account receivable to the Foundation in that control of the property given was not relinquished by the taxpayers. The debit and credit entries on the books of the taxpayers did not constitute a sufficient delivery. Thus, only actual payments made in 1962 to the Foundation may be claimed by the Plaintiffs as a charitable contribution for that year.

■ Failure to relinquish control is fatal to the effectuation of a gift, Johnson v. United States, 280 F.Supp. 412 (N.Y.1967). In the case just cited, the taxpayer agreed to furnish building materials and land to the Dunham Hollow West Stephentown Community Association if the Association would furnish the labor for building their headquarters. The project was started on the taxpayer's land in 1956, but the taxpayer did not convey the land to the Association until 1957. It was held that no charitable contribution was made until 1957 because of the taxpayer's failure to relinquish control. Plaintiffs here retained control of the funds coming from the Hotel at all times.

From the *Edson* and *Nehring* cases, supra, it appears that the courts have equated the Code and Regulations requirements as to payment with the rules of law regarding gifts. Because the Code and Regulation are clear and unequivocal, this approach leaves much to be desired in the way of statutory interpretation. The Code requires "payment * * * within the taxable year." The Regulation requires that the contribution be "actually paid" during the taxable year. Neither provision contains any language qualifying these terms. They must be taken in their natural and obvious sense. The Court has no other alternative. Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481 (1941). Here, there was neither actual payment of money in 1962 (except $1,083.33) nor a transfer of property with relinquishment of control which could constitute a payment. The money which is claimed to be a gift was not paid to the Foundation during the taxable year 1962 except the sum of $1,083.33. Regardless of whether the gift law approach or the statutory interpretation approach is used in this case, the result is the same. Plaintiffs are not entitled to a charitable contribution deduction in 1962, except to the extent of $1,083.33 actually paid.

Counsel for the Defendant will prepare a judgment in accordance with the views expressed in this Memorandum Opinion and in accordance with the parties' agreements with respect to other matters which were not submitted to the Court, and submit the same to the Court for its signature and entry herein.