ROBERT T. SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROBERT T. SMITH and EDNA L. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Smith v. Commissioner
Docket Nos. 9667-77, 8798-78
United States Tax Court
T.C. Memo 1981-371; 1981 Tax Ct. Memo LEXIS 372; 42 T.C.M. (CCH) 431; T.C.M. (RIA) 81371; July 20, 1981
*372 Petitioner, a professional writer, wrote a book which was published and copyrighted in 1967. Only 6,000 copies of this book were printed originally. In 1975, petitioner presented the copyright certificate to the directors of a museum. On his 1975 income tax return, petitioner claimed a charitable contribution deduction of $ 30,000 for donation of the copyright interest. Due to the limits of section 170(b)(1)(A), I.R.C. 1954, a portion of this deduction was carried over to 1976 under section 170(d)(1), I.R.C. 1954. Various other itemized deductions were claimed for 1974, 1975 and 1976, for taxes, interest, medical expenses, political contributions, "miscellaneous" business expenses and other charitable contributions. Respondent totally or partially disallowed all of these deductions for lack of substantiation. Held, aside from the claimed deduction for the alleged copyright donation, amounts of properly substantiated and, therefore, allowable deductions for 1974, 1975 and 1976 determined; heldfurther, without a supporting written transfer document, as required by Federal copyright law, a legal interest in the copyright was not transferred to the museum in 1975; heldfurther, *373 no charitable contribution deduction is allowed without a valid property interest transfer. John W. Folsom, for the petitioners. [1]
Albert L. Sandlin, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the years 1974 and 1975 of $ 1,911.95 and $ 5,300.64, respectively, as set forth in his statutory notice of deficiency dated June 13, 1977, and for the year 1976 of $ 5,057.68, as set forth in his statutory notice of deficiency dated April 25, 1978. The issues presented for our decision are whether petitioners are entitled to various itemized deductions for miscellaneous business expenses, interest, political contributions, taxes, medical expenses and charitable contributions in some or all of the years in question in excess of respondent's determinations and subsequent concessions. [2] *375 Determinative of each of these items is whether the petitioners have substantiated the *374 full amounts claimed as required by the applicable section [3] of the Internal Revenue Code. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, and the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Robert T. and Edna L. Smith, resided at Smyrna, Georgia, during the years in question and when the petitions herein were filed. They timely filed joint Federal income tax returns for taxable years 1974, 1975 and 1976 with the Internal Revenue Service Center, Chamblee, Georgia. They also filed amended returns *376 for the years 1975 and 1976 with the center at Chamblee. Since Edna did not join in the petition in Docket No. 9667-77 and is a party to the proceeding in Docket No. 8798-78 only by virtue of having filed a joint return with Robert, we will hereafter refer to Robert as petitioner. Since September 1963, petitioner has continuously been employed by the Federal Aviation Administrations (FAA). One of his duties with the FAA was the writing of periodic newsletters for private pilots. During the years in question, petitioner also received income as a member of the United States Air Force Reserves and received some royalties from materials authored as a free-lance writer of various aeronautical magazine articles and flying manuals and books. The costs of writing these items were expensed annually by petitioner. Petitioner authored and published, through a private printer, a book on the history of the Staggerwing Beechcraft airplane entitled Staggerwing! The book was copyrighted in 1967. In that same year, 2,000 copies were printed and, in 1968, a second printing of 4,000 was made. Beech Aircraft Corporation (hereafter Beech) purchased 300 of the first printing and 3,000 of the second *377 printing. As of September 1969, Beech had 2,500 copies and petitioner held 500 copies. True to the predictions of publishers who had rejected the opportunity to print Staggerwing! before petitioner resorted to a private printer, petitioner did not make a profit from the book. Nevertheless, petitioner printed, advertised and distributed the book himself from 1967 to 1969 at great expense. From September 1969 to November 1971, petitioner made numerous, unsuccessful attempts to sell the copyright of Staggerwing! to Beech. All of petitioner's offers, from $ 8,000 to $ 27,000, were rejected. In 1975, petitioner decided to contribute the copyright to the Staggerwing Museum Foundation, Inc. (hereafter Museum) rather than personally incur the expenses of revising and publishing a new Staggerwing!. The Museum is a tax-exempt organization under section 501(c)(3), incorporated in Tullahoma, Tennessee on October 26, 1973, to maintain a non-profit educational institution to foster, promote, and engage in activities for the improvement and better understanding of aviation and aeronautics, with particular emphasis on the Staggerwing Beechcraft airplane. Petitioner was a founder of the Museum *378 and has served as a trustee and as historian since January, 1974. In 1975, the Museum had approximately three hundred to four hundred members, of whom eighty to ninety percent were pilots. In February, 1975, the Museum Board of Directors, which was aware of petitioner's intent to transfer the copyright to the Museum, held its regular meeting, but took no action regarding the acceptance of the copyright. Soon thereafter, at a banquet for the Museum membership, attended by members of the Board of Directors, petitioner handed the original copyright certificate to W.C. Yarbrough, an officer of the Museum and an acquaintance of petitioner since 1962. As of the date of trial in this case, no action had been taken or legal documents processed to transfer the copyright from the name of the petitioner to the name of the Museum. Nevertheless, the Museum Board of Directors, believing that the costs of a revised edition would be a prohibitive $ 40,000 to $ 50,000, authorized and permitted Staggerwings Unlimited (hereafter Unlimited) to use the copyright, without a written contract or paid consideration, for the revision and production of a new Staggerwing!. Most of the stockholders of Unlimited, *379 a Chicago corporation, are also officers or trustees of the Museum. The new Staggerwing!, revised by Tom Lempicke who owns the copyright to the new edition, has been printed and presently is being distributed and sold by Unlimited, which will receive the profits without any obligation, to donate any of those proceeds to the Museum. Petitioner claimed charitable contribution deductions for the copyright totalling $ 30,000, even though he had earlier expensed his related costs. For 1976, petitioner deducted $ 14,844.09, having taken the remainder in 1975 as follows: Fair Market Value
$ 30,000.00
1975:
Charitable Contribution Limitation
(1/2 adjusted gross income)
15,900.41
Less: Allocation to Business Expenses
[4] 744.50
15,155.91
1976:
Fair Market Value
$ 30,000.00
Less: Claimed deduction for 1975
15,155.91
$ 14,844.09
Petitioner also claimed additional charitable deductions for 1975 and 1976 as follows: 1975:
Cash Contributions
$ 386.80
United Appeal
25.00
$ 411.80
1976:
Girl Scouts
$ 27.50
Girl Scouts
30.00
Staggerwing Museum
166.68
Staggerwing Museum
111.12
Staggerwing Museum
218.00
United Appeal
25.00
578.30
Respondent *380 disallowed petitioner's entire charitable deductions of $ 16,312.21 [5] for 1975 and $ 15,422.39 for 1976. In other matters, respondent and petitioner have differed as to the allowable amounts of certain other deductions, as follows: 1974
Respondent
Later
Interest
Claimed
Allowed
Allowed
Disallowed
Home Mortgage
$ 868.37
$ 868.37
C & S Bank
155.26
155.26
Sears
67.00
67.00
Rich's Dept. Store
26.44
26.44
Credit Union
507.14
$ 507.14
BankAmericard
5.87
5.87
Insurance loans
1,249.28
$ 1,249.28
First Bank
21.74
$ 2,879.36
$ 1,122.94
$ 528.88
$ 1,249.28 Miscellaneous expenses [6] *381 $ 4,468.10 (entirely disallowed) 1975
Political contributions
$ 200.00
(entirely disallowed)
Miscellaneous expenses
5,921.09
(entirely disallowed)
Other business deductions
1,253.42
(shown, but not
deducted, on return)
1976
Respondent
Later
Interest
Claimed
Conceded
Disallowed
Home Mortgage
$ 567.01 $ 522.20
$ 44.81
Davison's
59.41 59.41
BankAmericard
2.35 2.35
Sears
179.00 179.00
Credit Union
662.30 662.30
Mutual Benefit
10.04 10.04
Pan Am Life Ins.
184.25 184.25
Mutual Benefit
84.39 84.39
MONY
18.70 18.70
MONY
127.38 127.38
First State Bank
80.00 111.00
Math Error
(567.01)
Prudential
187.30
$ 1,407.82 $ 2,002.24
$ 190.89
Taxes
Claimed
Allowed
Respondent
Disallowed
Later
Conceded
State & Local
Income
$ 1,223.40 $ 1,223.40
Real Estate
507.96 $ 507.96
State & Local
Tax
121.00 121.00
General Sales
257.92 253.76
$ 4.16
Personal
Property
121.70 99.70
22.00
Math error
(1,223.40)
$ 1,008.58 $ 1,477.16
$ 728.66
$ 26.16
Georgia Income Tax disallowed) Medical Expenses
(originally entirely disallowed)
Later Conceded [8]
Insurance Premiums
$ 160.70
$ 160.70
(excess of $ 150)
Doctors/Dentists
1,424.00
1,333.00
Transportation
72.00
[7] *382 $ 1,681.70
$ 1,493.70
Less: 3% Adjusted
Gross Income
940.39
741.31
Insurance Premiums
150.00
150.00
(remainder)
$ 891.31 Miscellaneous expenses $ 2,940.74 (entirely disallowed) OPINION We will first address the question of petitioner's itemized deductions for 1974, 1975 and 1976, exclusive of the charitable contribution deductions for 1975 and 1976. For many of these items, our attention is drawn to petitioner's failure to provide adequate proof that the claimed amounts were spent, or, if spent, were spent for the deductible purposes claimed. Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). To take advantage of that grace, petitioner must qualify under certain rules and regulations imposed either directly or indirectly by Congress. Cf. Deputy v. duPont, 308 U.S. 488 (1940). The notices of deficiency, *383 by which the Commissioner determined that petitioner had not qualified for certain deductions, are presumed correct. To show otherwise, petitioner has the burden of proof. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
In prior cases, too numerous to list here, upon finding the taxpayer to be candid and forthright, we have chosen to approximate a figure for an allowable deduction if reasonable evidence is presented, while bearing heavily upon the petitioner whose inexactitude is of his own making. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). The Cohan rule is not applicable in some situations, however. For instance, use of Cohan has been specifically eliminated in the case of certain business deductions and replaced by the strict substantiation requirements of section 274(d). H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 427; S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 741; Sanford v. Commissioner,50 T.C. 823 (1968), affirmed per curiam 412 F. 2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969). Further, no deduction will be allowed, despite Cohan, if petitioner has failed *384 to present proof upon which even a reasonable estimate may be based. Beyond the amounts allowed or conceded by respondent, the majority of petitioner's claimed deductions fall within one or both of those two exceptions to Cohan. Petitioner's attempt to prove the contested deductions consisted of petitioner's self-serving testimony of general statements contending the deductibility of the items, copies of his 1974, 1975, and 1976 income tax returns, and a copy of an "affidavit" presented to respondent prior to trial with attached copies of letters, receipts and checks purportedly supporting the deductions claimed. Some of the copied materials, coupled with petitioner's generalized testimony, are sufficient substantiation for some of the claimed deductions. Most of these deductions, thus properly substantiated, have been allowed or conceded by respondent, as noted in the facts above. Those few other deductions, clearly proven or sufficiently established to warrant application of Cohan, are set out below. To the contrary, respondent's disallowance of those deductions not earlier allowed or conceded or specifically allowed below is sustained. Petitioner has failed to carry his burden *385 of proof as to those deductions. Those amounts of claimed deductions of interest for 1974 and 1976, political contributions for 1975 and taxes and medical expenses for 1976 for which no documentation was provided were disallowed by respondent. We agree with that disallowance. A more complicated situation is presented by the jumbled summation of amounts listed on petitioner's returns for the years in question as "miscellaneous deductions." See note 6, supra. These amounts were disallowed intoto by respondent. In his testimony, petitioner vaguely identified each amount, item by item. Many of these amounts were not documented or explained further. Those amounts documented by the copies of letters, checks or receipts were clearly paid. However, most of the documentation is as vague as petitioner's testimony, failing to give specific identification of an activity or expense which would trigger deductibility of the amount shown. Further, many of the amounts, even if assumed paid for the reasons shown, are indistinguishable from personal living expenses, which are not deductible. Section 262. For instance, although we acknowledge petitioner as a professional writer on the subjects *386 of airplanes and flying and we are certain he incurred certain expenses in that capacity, deductions will not be allowed for claimed amounts merely because they were labelled "office expenses" on his return and simply identified as such by his uncorroborated testimony. Further identification and explanation of those amounts are necessary to distinguish them from items which are not deductible because they are of a personal nature or because they otherwise fail to qualify for deduction as business expenses or as expenses for the production of income. This is a recurring problem in the analysis of the conglomerate miscellaneous deduction claimed for each of the years in question. Those amounts which we can not identify or estimate confidently as deductible items we must disallow. "We can not assume what might be proven by evidence which was not introduced." Lyon v. Commissioner, 1 B.T.A. 378, 380 (1925). In addition, submission of petitioner's returns for the years in question as evidence of their contents is not sufficient to carry petitioner's burden, even though they are sworn to be accurate and otherwise restated by petitioner's testimony. Mears v. Commissioner, 386 F. 2d 450 *387 (C.A. 5, 1967), affirming per curiam a Memorandum Opinion of this Court; [9]Halle v. Commissioner, 7 T.C. 245, 247 (1946), affd 175 F. 2d 500 (C.A. 2, 1949), certiorari denied 388 U.S. 949 (1950). Nevertheless, certain amounts can be identified reasonably or estimated confidently and will be allowed as deductions under the Cohan rule. For 1974, petitioner is entitled to deductions, beyond those allowed or conceded by respondent, of $ 111.12 for charitable contributions, of $ 156.00 for maintenance of his Air Force Reserve uniform, and of $ 195.73 for expenses incurred as a professional writer. For 1975, additional deductions of $ 212.00 for Air Force Reserve uniform maintenance and $ 449.94 for expenses incurred as a professional writer will be allowed. Finally, for 1976, an additional deduction of $ 21.22 for expenses incurred as a professional writer will be allowed. The final issue [10] *389 *390 for our decision is the proper charitable contribution deductions of petitioner for 1975 and 1976. Central to this matter is the alleged "donation" of a copyright to Museum by petitioner, valued by petitioner at $ 30,000. Respondent denies the existence of any of the elements *388 of a properly deductible charitable contribution, contends that no benefit will be received by Museum, refutes petitioner's valuation of the copyright, and contends that petitioner had no basis in the copyright, having previously deducted all expenses related to writing the book copyrighted and that, if any amount is allowed, the contribution must be reduced by the amount of ordinary income which would have been ealized from the sale of the copyright. Petitioner's other charitable deductions for 1975 and 1976 were disallowed as unsubstantiated. Section 170 provides a deduction for any "charitable contribution," as defined by section 170(c), made within the taxable year. To be deductible, however, the contribution or gift must be verified as prescribed by regulation. Section 170(a)(1); section 1.170A-1(a)(2), Income Tax Regs. The amount of the deduction is further limited by reductions for what would have been ordinary income had the contributed property been sold (section 170(e)(1)(A)) and by amount limitations related to a percentage of the taxpayer's adjusted gross income (section 170(b)(1)). As with the other disallowed deductions discussed above, the burden of proving the existence and qualification of claimed charitable contribution deductions is on petitioner. Welch v. Helvering, supra; Rule 142(a), *391 supra. As to part of the smaller portion of charitable deductions of $ 411.80 and $ 578.30 claimed by petitioner for 1975 and 1976, respectively, petitioner has met only part of his burden and will be allowed charitable contribution deductions for 1975 and 1976 of $ 25.00 and $ 360.30, respectively. The larger portion of petitioner's claimed charitable contribution deductions for the years in question consists of the alleged transfer of a $ 30,000 copyright in 1975. Of the $ 30,000 value claimed, $ 15,155.91 was claimed in 1975 within the limit of 50 percent of adjusted gross income under section 170(b)(1)(A), and the remaining $ 14,844.09 was claimed in 1976 as a carryover under the provisions of section 170(d)(1). Although we find merit in all of respondent's arguments for disallowing the charitable deduction for the copyright, since any one of these arguments will defeat the deduction, we address only one. As used in section 170, the term "charitable contribution" is synonymous with the term "gift." DeJong v. Commissioner, 36 T.C. 896 (1961), affd. 309 F. 2d 373 (C.A. 9, 1962). A valid gift requires an "absolute transfer * * * taking effect immediately and fully executed *392 by a delivery of the property by the donor, and an acceptance thereof by the donee." Edson v. Lucas, 40 F. 2d 398, 404 (C.A. 8, 1930); see Estate of Swope v. Commissioner, 41 B.T.A. 213, 218 (1940); Ross v. Commissioner, 28 B.T.A. 39, 43 (1933). Thus, to qualify as a deductible charitable contribution, this required transfer during the taxable year must convey, under the applicable law, an ascertainable legal interest in the subject property, unencumbered by conditions in the transfer document or in the laws relating to the transfer which might negate the interest. Sections 1.170A-1(b) and (e), Income Tax Regs; cf. Walker v. Commissioner, 91 F. 2d 297 (C.A. 5, 1937), affirming a Memorandum Opinion of this Court; Londen v. Commissioner, 45 T.C. 106 (1965); Darling v. Commissioner, 43 T.C. 520 (1965). Petitioner has failed to show that a proper transfer of the copyright interest was completed in 1975.
Determination of whether a properly completed transfer of a copyright interest occurred is governed by state law, but only after valid Federal restrictions are met. Kingsrow Enterprises, Inc. v. Metromedia, Inc., 397 F. Supp. 879 (S.D. N.Y. 1975). Petitioner's attempted 1975 transfer *393 failed to meet the Federal requirement of a written transfer instrument signed by petitioner as owner. 17 U.S.C. sec. 28 (1976); [11] *394 Public Ledger Co. v. Post Printing & Publishing Co., 294 Fed. 430, 433 (C.A. 8, 1923); Gardner v. Nizer, 391 F. Supp. 940, 942 (S.D.N.Y., 1975); Group Publishers v. Winchell, 86 F. Supp. 573, 576 (S.D.N.Y., 1949). Further, possession of the copyright. certificate does not constitute ownership of the copyright itself. The certificate is not the copyright and the copyright "is not transferred by mere physical delivery, or other acquisition, of the certificate." Kingsrow Enterprises, Inc. v. Metromedia, Inc., supra at 881. Therefore, standing alone, petitioner's physical presentation of the copyright certificate to Museum, although accomplished with much ceremony, was insufficient to transfer a legal interest in the copyright in 1975 to the Museum. No written transfer instrument was executed by petitioner and no formal action was taken by Museum to formally transfer the ownership in the copyright to it. [12] *396 *397 This invalid transfer does not begin to qualify as a deductible charitable contribution. Since there was no charitable contribution, related issues, such as the benefit to Museum, the value *395 of the copyright and the amount of the allowable charitable contribution deduction, are rendered moot. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. On June 25, 1979, the date of trial of this case, counsel for petitioner filed an Entry of Appearance in this matter and presented petitioner's case. All matters prior to trial were handled by petitioner pro se.↩
2. Respondent has conceded some interest deductions for 1974 and some interest and taxes deductions for 1976 in excess of his original determinations. In fact, respondent's concessions for interest and taxes deductions for 1976 exceed petitioners' originally claimed deductions as a result of unclaimed items conceded and math errors in both amounts which were discovered and corrected in petitioners' favor by respondent. Respondent has also conceded some amounts which may be used to calculate a medical expense deduction for petitioners, whose originally claimed medical deduction was totally disallowed. All of these figures will be set out in the facts below. For 1976, respondent applied the standard deduction in his determination, rather than the lesser allowed itemized deductions, which now, due to respondent's concessions, exceed the standard deduction for 1976 and should be applied instead of the standard deduction. Readjustment of petitioners' General Tax Credit for 1976 may also be necessary. For these reasons, a decision will be entered under Rule 155 in docket No. 9667-77, should we decide any of the remaining issues for respondent, and in docket No. 8798-78, regardless of our decision on the remaining issues. 3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in question. Deductions are allowed for trade or business expenses under section 162 subject to the substantiation requirement of section 274(d), for interest under section 163, for taxes under section 164, for charitable contributions under section 170, for expenses for the production of income under section 212, also subject to section 274(d), for medical expenses under 213, and for political contributions under section 218↩.
4. This amount was eliminated from petitioner's miscellaneous deductions and from the charitable contribution amount shown above. No explanation was given.↩
5. This amount includes the $ 744.50 "allocated to business" on petitioner's amended return for 1975. See note 4, supra↩.
6. The lists of these expenses on petitioner's income tax returns for 1974, 1975, and 1976, are not sufficiently informative, despite their great length, to warrant reproduction here. It is enough to say that these expenses included amounts for "dues," "donations," "answering service," meals, car rental, truck expenses, advertisements, attorney fees, damaged shrubs, lumber, hardware, storm windows, utilities, books, maps, films, stamps, stationery and "office supplies." The amounts in each list were summed for each year without category or other identification to specific facts which would explain their presence on the respective return or their deductibility.
8. Final calculation of the medical expense deduction may be dependent upon the decision of other issues herein. Respondent also conceded medicine expenses of $ 90.45, but this amount is more than offset by the floor of one percent of petitioner's adjusted gross income for 1976.↩
7. The arithmetically correct total is $ 1,656.70. Since respondent disallowed the medical expense deduction in full, no correction of petitioner's arithmetic was necessary. 9. T.C. Memo 1966-173↩.
10. Petitioner requested an award of attorney fees in his petition and argued that he was denied the protection of the Fifth Amendment when he was questioned about his tax returns without being given the warnings outlined in Miranda v. Arizona, 384 U.S. 436 (1966). Petitioner's request for attorney fees is denied. The petitioner, not respondent, initiated the instant proceeding as to all issues. Key Buick Co. v. Commissioner, 613 F. 2d 1306 (C.A. 5, 1980), affirming 68 T.C. 178 (1977). Petitioner's claim that respondent's failure to give Miranda warnings violated petitioner's Fifth Amendment privilege against self-incrimination must also be dismissed. A taxpayer's Fifth Amendment rights are not endangered when, as in the instant case, criminal charges are not threatened or probable. Rogers v. United States, 340 U.S. 367, 374 (1951); Brown v. Walker, 161 U.S. 591, 599-600 (1896); Wilkinson v. Commissioner, 71 T.C. 633, 638 (1979); Roberts v. Commissioner, 62 T.C. 834, 838 (1974). Therefore, Miranda warnings are not necessary in a non-criminal investigation known merely to be an audit. Harper v. Commissioner, 54 T.C. 1121, 1137-1139 (1970). Further, since Miranda is invoked by custodial surroundings and not by the investigation alone, Miranda warnings are inapplicable to even a criminal investigation if the taxpayer is not physically detained. Mathis v. United States, 391 U.S. 1 (1968); United States v. Prudden, 424 F. 2d 1021, 1025 (C.A. 5, 1970). Petitioner was informed that no criminal proceedings against him were anticipated and he was not physically detained during the investigation. Therefore, the information obtained during the audit is admissible in the absence of Miranda warnings without violating petitioner's Fifth Amendment rights. See also, Taglianetti v. United States, 398 F. 2d 558, C.A. 1, 1968); United States v. White, 417 F. 2d 89(C.A. 2, 1969); United States v. Jackiewicz, 433 F. 2d 415 (C.A. 3, 1970); United States v. Bagdasian, 398 F. 2d 971 (C.A. 4, 1968); United States v. Maius, 378 F. 2d 716 (C.A. 6, 1967); Muse v. United States, 405 F. 2d 40 (C.A. 8, 1968); United States v. Chikata, 427 F. 2d 385 (C.A. 9, 1970); Hensley v. United States, 406 F. 2d 481 (C.A. 10, 1968). But see, United States v. Dickerson, 413 F. 2d 1111↩ (C.A. 7, 1969).
11. § 28. Assignments and bequests Copyright secured under this title or previous copyright laws of the United States may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright, or may be bequeathed by will. Title 17 was revised in its entirety by the Copyright Reform Act of 1976, Pub. L. 94-553, Title I, sec. 101, 90 Stat. 2541. Some parts of this revision became effective October 19, 1976, but the majority of the revision, including the pertinent sections below, became effective January 1, 1978. § 201. Ownership of copyright (d) Transfer of Ownership.-- (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession. § 204. Execution of transfers of copyright ownership (a) A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.↩
12. An Affidavit was presented by petitioner at trial which stated that, as of June 15, 1979, legal transfer of the original copyright had not occurred. Trial in this case was held on June 26, 1979. By attachment of his opening brief, petitioner attempted to submit as evidence a "NUNC PRO TUNC ASSIGNMENT" for February 1, 1975, executed by petitioner on August 8, 1979, six weeks after the trial of this case. We will not consider this document as evidence in this case. Cf. Van Den Wymelenberg v. United States, 397 F. 2d 443 (C.A. 7, 1968) affirming 272 F. Supp 571 (E.D. Wis. 1967) certiorari denied 393 U.S. 953 (1968) (trust amendment, executed after tax year of the gift in trust, will not invoke gift tax exclusion retroactively). Even if effective, the "assignment" was executed late and presented late. Petitioner will not be allowed to present evidence subsequent to trial by attachment to his brief, especially when the evidence was created subsequent to trial. The potential for abusive manipulation of the facts of a case by a party presenting post-trial evidence and the obviously resultant prejudicial advantage to that party are repugnant to the accepted processes of our judicial system. Evidence of petitioner's actions subsequent to trial is inadmissible. Fed. R. Evid. 403. Petitioner's position would be dubious even with the admission of the nuncprotunc "assignment" into evidence. Whatever the effect between the parties, an attempt to cure retroactively a defect in the transfer of a copyright is ineffective and cannot be used to defeat the intervening rights of bona fide purchasers from the legitimate owner. Accord, Duplan Corp. v. Deering Milliken, Inc., 444 F. Supp. 648, 757 (D.S.C., 1977) affirmed in part, reversed in part 594 F. 2d 979 (C.A. 4, 1979) certiorari denied sub. nom. Ateliers Roannais de Constructions Textiles & Arct, Inc. v. Duplan Corp., 444 U.S. 1015 (1980).    Thus, subsequent to the physical presentation of the copyright certificate to the Museum, petitioner retained the authority to transfer the copyright completely to a third party to the exclusion of the Museum. Petitioner continued to have control of the copyright. Relinquishment of control is a most important element of a charitable contribution; failure to relinquish control is fatal to the effectuation of a gift. Jordan v. United States, 297 F. Supp. 1326, 1329 (W.D. Okla., 1969). While the assignment may have been effective as of the date of the purported nuncprotunc↩ assignment, that taxable year is not before us and we do not decide that here.